**UNITED STATES of America, Plaintiff,**

**v.**

**Geraldo HERNANDEZ, Defendant.**

**No. 89 Cr. 999 (MBM).**

United States District Court,
S.D. New York.

Dec. 31, 1990.

Michael Pinnisi, Asst. U.S. Atty., New York City, for plaintiff.

Barry C. Scheck, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Following denial of defendant Geraldo Hernandez's motion to suppress items seized at the time of his arrest, including the loaded .357 magnum revolver that is the subject of the one-count indictment in this case, 738 F.Supp. 779 (S.D.N.Y.1990), he entered a conditional plea of guilty to possessing that weapon after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g). He thus preserved his right to appeal the outcome of the suppression motion. Fed.R.Crim.P. 11(a). Hernandez and the government now dispute how his crime and his record should be treated for sentencing purposes, a disagreement that can be resolved only by grasping and otherwise engaging several nettles and thorns in what our Circuit has called "the wilderness of the Guidelines." *United States v. Colon*, 905 F.2d 580, 584 (2d Cir.1990).

Defendant's base offense level pursuant to U.S.S.G. § 2K2.1(a)(2) is 12 and, as set forth below, he has earned two points for acceptance of responsibility. U.S.S.G. § 3E1.1. His criminal history category is IV. Without enhancements or departures, an adjusted offense level of 10 and a criminal history category of IV would require that he be sentenced to a term of imprisonment of between 15 and 21 months. U.S.S.G. Chap. 5, Part A. However, for the reasons set forth below, I have concluded that substantial upward departure is warranted both with respect to the offense level and with respect to the criminal history category, with the result that defendant has been sentenced to 90 months imprisonment.

### I.

Familiarity with the earlier opinion denying the suppression motion may be assumed, but it is nonetheless useful to recall some facts set forth in that opinion insofar as they relate to the sentencing issues. Hernandez was arrested on December 11,

1989 by a fugitive apprehension squad of Deputy U.S. Marshals executing a probation violation warrant issued in the Southern District of Florida. That warrant charged that on another occasion he had possessed a 12–gauge shotgun and a .357 magnum revolver other than the weapon that provides the basis for the charge in this case. The arrest was effected in Hernandez's apartment after he was seen entering the building with two unidentified males, apparently confederates, and carrying a black attache case and what turned out to be a cellular telephone. As he approached the building, Hernandez "kept pulling up his belt, like something was falling," which suggested he may well have had a gun in his waistband. (Tr. 22) The Deputy Marshals who arrested Hernandez seized the loaded revolver found under a mattress in the bedroom, a triple beam Ohaus scale found in a closet in the room where Hernandez was arrested, and over $35,000 in cash, the cellular telephone, a beeper, and a driver's license bearing Hernandez's picture and a false name, all in plain view in the apartment. 738 F.Supp. at 781.

The loaded weapon, the cash, the scale, the cellular telephone and the beeper, all found in Hernandez's apartment, virtually compel a finding by a preponderance of the evidence that at the time of his arrest Hernandez was actively involved in drug trafficking, and I so find. See *United States v. Tramunti*, 513 F.2d 1087, 1105 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975) ("The possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking on a large scale is similar to the possession of special means, such as tools, or apparatus, which is admissible to show the doing of an act requiring those means.") Moreover, the amount of cash and the presence of the triple beam scale make it more likely than not in my view that illicit drugs involved were, as the government has argued, of a "white powder" variety, meaning either cocaine or heroin. That is not to say it is unheard of for large amounts of cash and a triple beam scale, as well as a beeper and a weapon, to

be the accoutrements of marijuana dealing, *United States v. Seta*, 669 F.2d 400, 402 (6th Cir.1982); *United States v. Cashin*, 739 F.Supp. 1107, 1108 (E.D.Mich.1990), marijuana being another controlled substance in which Hernandez may have dealt, based on his prior record. Hernandez's criminal history, as set forth below, included a prior conviction that involved both marijuana and cocaine. Rather, even giving Hernandez the benefit of the highest marijuana price that research could locate in any reported case in the last two years, $1,000 per pound, *United States v. Campbell*, 874 F.2d 838, 840 (1st Cir.1989), more than $35,000 worth of marijuana at even that price could more conveniently have been weighed on a bathroom scale than on the sensitive instrument Hernandez had in his closet. In any event, the question of precisely what kind of illegal drugs Hernandez was dealing in at the time of his arrest is of strictly academic interest, because even giving Hernandez the benefit under the Sentencing Guidelines of attributing the cash to marijuana, the most innocuous controlled substance plausibly involved here, the Guideline selected for a benchmark in this case, as set forth below, is well below the Guideline that would apply if all the cash were attributed even to marijuana.

Hernandez earned his criminal history category of IV with two prior felony convictions. The first, in the Southern District of Florida in 1984, was for 10 counts of unlawful firearms trafficking, including two counts addressed in particular to transportation of firearms with obliterated serial numbers. The Florida indictment discloses that Hernandez had five co-conspirators, four of them co-defendants, and that the conspirators sought to or did transport more than 200 weapon from Florida to New York. The presentence report, to which Hernandez made no objection insofar as it described his Florida offense (12/6/90 Tr. 13), reports that there were three shipments of weapons, of which only the third was intercepted, that the intercepted shipment included four semi-automatic weapons that had been "special-ordered for the

purposes of converting them to fully-automatic weapons," and that the value of the last shipment alone was more than $28,000. Pre–Sentence Report ¶ 23. The second conviction, in the state courts of New Jersey, was for possession of marijuana, possession with intent to distribute marijuana, and possession of cocaine.

## II.

Based on those facts and that criminal history, the government argued that Hernandez should be sentenced as a Career Offender pursuant to §§ 4B1.1 and .2, and alternatively that a substantial upward departure is warranted because Hernandez was using the subject weapon in aid of the narcotics trafficking in which he obviously was engaged at the time of his arrest. Hernandez argued that the facts do not warrant a finding that he was engaged in any particular narcotics offense at the time of his arrest, and that if any upward departure is warranted it should be limited to a two-point increase in the offense level. If Hernandez were to be sentenced as a career offender, his criminal history category would rise automatically to VI, and his offense level, because his crime is punishable pursuant to 18 U.S.C. § 924(a)(2) by up to 10 years' imprisonment, would rise automatically to 24. U.S.S.G. § 4B1.1. Deducting two points from his offense level for acceptance of responsibility would yield a sentencing range at offense level 22 and criminal history category VI of 84–105 months.

### A. Career Offender Status

To the extent relevant here, the Guidelines at § 4B1.1 define a career offender to include one whose offense of conviction is a felony that is a crime of violence and who has been convicted of two prior felonies that were either crimes of violence or controlled substance offenses. Hernandez does not contest that his state court conviction was a controlled substance offense. He contests vigorously that either the federal weapons conviction in Florida or the instant conviction is a crime of violence.

A crime of violence is defined to include any offense punishable by a term exceeding one year that either "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(i), (ii). Thus, a crime of violence may be a crime comprised of either "elements" that include at least a threat of violence, or "conduct" that involves at least a threat of violence. It is apparent from the text that neither Hernandez's predicate weapons offenses in Florida nor the offense of conviction in this case has as an "element" any threat or actual use of physical force. Rather, he was charged in Florida with conspiring to traffic unlawfully in firearms, and with dealing in firearms without a license, transporting in interstate commerce firearms with obliterated serial numbers, and transferring firearms to unlicensed persons. Pre–Sentence Report at ¶ 27; 18 U.S.C. §§ 371, 922(a)(1)(A), 922(a)(5) and 922(k). He is charged in this case with possessing a weapon after having been convicted of a felony. One can commit any of those crimes without threatening or using or attempting to use physical force against another person, and thus such offenses can be proved without evidence of such conduct. Therefore, if either the Florida conviction or the current one may be classified under the Guidelines as a crime of violence, it cannot be so classified based on the "elements" prong of the definition, but rather must be so classified based on the "conduct" portion, or not at all.

Application Note 2 to that Guidelines section expands both the "elements" and the "conduct" segments of the definition. It lists crimes involving "elements" or "conduct" which categorically classify them as crimes of violence, and permits inclusion of other crimes within the "conduct" portion of the definition "where ... the conduct set forth in the count of which the defendant was convicted involved use of explosives or, by its nature, presented a

serious potential risk of physical injury to another." Application Notes, as commentary, stand in relation to the Guidelines as legislative history to a statute, U.S.S.G. § 1B1.7 comment (backg'd), but with the added caveat in the Guidelines themselves that failure to follow commentary interpreting or explaining how a particular guideline is to be applied "could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal." U.S.S.G. § 1B1.7. None of the conduct charged in either the Florida indictment or the one in this District involved use of explosives. The question, therefore, is whether "the conduct set forth in the count[s] of which the defendant was convicted" either in Florida or here "... by its nature, presented a serious potential risk of physical injury to another."

As I read it, that Application Note, particularly when considered in relation to the history of the Guideline itself and relevant authority, means that it is not permissible to answer that question by looking to the circumstances surrounding the conduct

charged in the counts of conviction. Rather, I am limited to considering the charged conduct. First, the language of the note itself is specific in limiting the court's focus to "the conduct set forth in the count[s] of which the defendant was convicted." [1]

Moreover, the history of the Guideline and authority interpreting it provide useful contrast for the current Guideline. The predecessor to the current Guideline incorporated by reference the definition of a crime of violence contained in 18 U.S.C. § 16, as follows:

"(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

U.S.S.G. § 4B1.2 (1988). Application Note 1 to that Guideline listed certain specific offenses interpreted by the Sentencing

---

1. That literal reading is validated, albeit much less than decisively, by the following excerpt from a publication of the U.S. Sentencing Commission entitled, "Questions Most Frequently Asked About the Sentencing Guidelines," issued after the effective date of the guideline in question:

"44. **QUESTION:** Is bank larceny considered a crime of violence when applying the career offender enhancement? What if the defendant actually committed bank robbery but is charged with bank larceny?
**ANSWER:** The career offender provision of the guidelines requires use of the *offense of conviction* (i.e., the statutory violation for which the defendant was convicted). Guideline 4B1.2(1) states that '[t]he term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.'
This definition is essentially identical to the definition of 'violent felony' in 18 U.S.C. § 924(e)(2)(B). In determining whether a crime is a 'violent felony' within the meaning of that statute, courts have focused on the

elements and inherent nature of the offense as denominated by the statute, rather than on the real offense conduct. Application Note 2 to § 4B1.2 lists several offenses that the Commission considers to be crimes of violence and bank larceny is not among them. However, the commentary advises that other offenses are to be considered crimes of violence "... where (A) that offense has [as] an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth in the count of which the defendant was convicted involved the use of explosives or, by its nature, presented a serious potential risk of physical injury to another.' Thus the court must decide whether the count of conviction meets this criteria."
*Id.* at p. 14. The authority of that pronouncement from the Sentencing Commission must be mightily discounted, however, by the following disclaimer on the cover of the publication in question:
"**Disclaimer: Information provided by the Commission's Training Staff is offered to assist in understanding and applying the sentencing guidelines. The information does not necessarily represent the official position of the Commission, should not be considered definitive, and is not binding upon the Commission, the court, or the parties in any case.**"

Commission to qualify automatically as crimes of violence, and then added:

"Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered."

U.S.S.G. § 4B1.2, comment (n. 1). That Application Note became the focus of dispute among some Circuit Courts other than our own as to whether a sentencing court could consider underlying conduct in determining whether a conviction involved a crime of violence, or was limited to a generic definition of the offense. The Third, Fifth, Sixth and Seventh Circuits permitted consideration of underlying conduct. *United States v. Williams*, 892 F.2d 296, 304 (3rd Cir.1989); *United States v. Flores*, 875 F.2d 1110, 1112 (5th Cir.1989); *United States v. Maddalena*, 893 F.2d 815, 820 (6th Cir.1989); *United States v. McNeal*, 900 F.2d 119, 122–23 (7th Cir.1990). The Ninth and Eleventh Circuits did not. *United States v. Selfa*, 918 F.2d 749, (9th Cir. 1990); *United States v. Becker*, 919 F.2d 568 (9th Cir.1990); *United States v. Gonzalez–Lopez*, 911 F.2d 542, 547 (11th Cir. 1990). *But see, United States v. Baskin*, 886 F.2d 383, 389 (D.C.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990) (holding that for purposes of deciding whether to depart downward, a "sentencing judge retains discretion to examine the facts of a predicate crime to determine whether it was a crime of violence notwithstanding the Commentary to the guidelines' predetermined list of crimes which it considers to be crimes of violence").

■ I believe the Sentencing Commission put an end to that dispute when it changed the text of § 4B1.2 in 1989 by deleting the reference to 18 U.S.C. § 16, substituting language that repeats *in haec verba* the definition of a "violent felony" in 18 U.S.C. § 924(e)(2)(B), and adding the current Application Note 2. The statute from which the Sentencing Commission took its new edition of § 4B1.2, 18 U.S.C. § 924(e), defines the predicates for sentencing one who unlawfully possesses firearms to a mandatory 15–year prison term. The Supreme Court has held that a sentencing court applying that statute may not go beyond statutory definitions of prior offenses to consider the particular facts underlying the convictions. *Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990). Its reasoning included reliance not only on the text and legislative history of the statute, but also on the practical difficulties and potential unfairness that would attend almost any attempt to delve into the conduct underlying past cases. *Id.* at 2159–60. The Ninth Circuit applied that reasoning to bar inquiry into the underlying circumstances of past convictions even under the 1988 version of Guideline § 4B1.2, with its potentially expansive Application Note 1 set forth at page 1185 *supra. Becker, supra*, 919 F.2d at 569–70. That reasoning applies even more forcefully to the current Guideline, which embodies precisely the statutory language the Court was construing in *Taylor* and contains the limiting Application Note 2 quoted at page 1184 *supra*. However, to the extent that the Court in *Taylor* questioned the accuracy of relying for purposes of 18 U.S.C. § 924(e) on "the indictment or other charging paper," 110 S.Ct. at 2159, that reasoning cannot be applied to U.S.S.G. § 4B1.2, because Application Note 2 specifically permits the sentencing court to consider "*the conduct set forth in the count* of which the defendant was convicted...." (emphasis added)

Applying those principles, it is apparent that Hernandez's federal firearms conviction in Florida amply qualifies as a crime of violence. As noted at the time of sentence, the offense even in its bare-bones description in paragraph 21 of the presentence report reflects multiple counts involving multiple weapons with serial numbers obliterated. The transportation of firearms with obliterated serial numbers is a separate offense wholly apart from transport-

ing such firearms without a license, *compare* 18 U.S.C. § 922(k) *with* 18 U.S.C. § 922(a)(1), because the obliteration of serial numbers obviously facilitates and thereby encourages the use of such firearms in the commission of violent crimes by minimizing the risk of detection. Such conduct, "by its nature, present[s] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2, comment (n. 2). The Florida indictment discloses that the charged conduct of which Hernandez was convicted involved the actual or attempted shipment of more than 200 weapons from Florida to New York on three separate occasions, which confirms resoundingly the potential for violence inherent in the charged conduct of which Hernandez was convicted. Here, I need not consider whether any of these factors taken alone would be sufficient to warrant a finding that the Florida conviction was for crimes of violence; I conclude that together they are sufficient.

██ The charged conduct in the indictment in the case at bar does not yield the same result. Here, Hernandez is charged simply with possessing a weapon after having been convicted of a felony. The government urges that I follow *United States v. O'Neal*, 910 F.2d 663 (9th Cir. 1990), which construed the earlier version of U.S.S.G. § 4B1.2, and hold that, "[a] categorical analysis suffices to conclude that the offense of being a felon in possession of a firearm by its nature poses a substantial risk that physical force will be used against [a] person...." 910 F.2d at 667. The *O'Neal* Court based its holding on the "congressional declaration [contained in 18 U.S.C.App. § 1201 (1982)] that possession of firearms by felons poses [a] threat to commerce and to the President and Vice President of the United States," and on Senator Russell Long's comments at the time the original version of 18 U.S.C. § 922(g)(1) was passed as part of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, to the effect that felons " 'may not be trusted to possess a firearm without becoming a threat to society.' " 910 F.2d at 667 (quoting 114 Cong. Rec. 14,773 (1968)).

After considering that holding, and the logic that underlies it, I conclude respectfully that *O'Neal* was incorrectly decided and I decline to follow it. First, the findings and statements cited by the *O'Neal* court were all made as part of the process of deciding whether to criminalize weapons possession by felons. That the threat of violence by some, or many, or even most felons was sufficient to justify a congressional decision to criminalize the conduct at issue does not bear at all on whether any convicted felon who possesses a weapon should be treated under the Sentencing Guidelines as having committed a crime of violence. For example, it seems difficult to believe that the Sentencing Commission would have embraced the statements and findings quoted and relied on in *O'Neal*, so fervently as to mandate that a convicted tax evader be deemed to have committed a crime posing a "serious potential risk of physical injury to another" if he possesses a weapon.

Moreover, the logic of *O'Neal* proves far too much in other respects as well. The list of persons whose possession of a weapon may be prosecuted federally is not limited to convicted felons. It included in the original 1968 version of the statute anyone "who is a fugitive from justice," anyone "who is an unlawful user of or addicted to any controlled substance," and anyone "who has been adjudicated as a mental defective or who has been committed to a mental institution." To that list was added as § 102 of the Firearms Owners' Protection Act of 1986, Pub.L. 99–308, unlawful aliens, anyone "who has been discharged from the Armed Forces under dishonorable conditions," and anyone "who, having been a citizen of the United States, has renounced his citizenship." See 1986 U.S. Code Cong. & Admin.News p. 1349. Once again, it is difficult to conclude that the decision to criminalize weapons possession by such persons necessarily means that any such person found in possession of a weapon should be considered under the Sentencing Guidelines to have committed a crime that "by its nature, presented a seri-

ous potential risk of physical injury to another." U.S.S.G. § 4B1.2, comment (n. 2).

Because the conduct charged in the indictment in this case, of which Hernandez was convicted on his guilty plea, considered without reference to surrounding circumstances not charged in the indictment, does not constitute a crime of violence as defined in the relevant Guideline and commentary, Hernandez cannot be sentenced as a career offender. The Guidelines and commentary, as analyzed above, compel this finding even though, as discussed below, when one examines the circumstances surrounding this offense, and relates those circumstances to both this offense and Hernandez's prior history, it is apparent that under a better drawn Guideline, or one defined by more sensible commentary, Hernandez would be sentenced as a career offender. Regrettably, however, Application Note 2 to the Guideline is made to do double duty: it limits a sentencing court's inquiry not only as to past offenses, which pose potentially intractable problems of proof and therefore warrant such limitation, but also as to the offense of conviction, which poses no such problems and therefore does not warrant such limitation. But if this is an anomaly, as I believe, it is one to be corrected by those who draft, and occasionally redraft, the Guidelines, not by me. *Cf. Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 376, 106 S.Ct. 1890, 1902, 90 L.Ed.2d 369 (1986) (only Congress can rewrite a statute).

### B. *Upward Departure*

To hold that Hernandez may not be sentenced under the Guidelines as a career offender does not end the inquiry. There remains to be considered (1) whether reliable information shows that Hernandez's criminal history category of IV does not adequately reflect the seriousness of his past criminal conduct and the likelihood that he will commit other crimes, in which event an upward departure with respect to criminal history is warranted pursuant to U.S.S.G. § 4A1.3, and (2) whether, as to the offense of conviction, there are present here aggravating circumstances not adequately taken into account by the Sentenc-

ing Commission in formulating the Guideline applicable to that offense, in which event an upward departure with respect to offense level is justified pursuant to U.S.S.G. § 5K2.0.

### 1. Criminal History Category

In *United States v. Cervantes*, 878 F.2d 50, 53–55 (2d Cir.1989) and *United States v. Coe*, 891 F.2d 405, 412–14 (2d Cir.1989), the Second Circuit specified the procedure generally to be followed in determining whether and to what degree to depart upward with respect to a defendant's criminal history category. That procedure is first to find that the computed range does not adequately reflect the seriousness of the defendant's record and his propensity to commit further crimes, and then to proceed sequentially to the next category, and not to proceed further unless reason can be given why that category as well is inadequate. *Coe*, 891 F.2d at 412–13.

In specifying that procedure for the usual case, the Court apparently found that in the criminal history category, the Sentencing Commission was "focusing on 'prior' misconduct." *United States v. Kim*, 896 F.2d 678, 683 (2d Cir.1990). As to most Guideline determinations, that apparently was the Commission's focus. However, career offender status under the Guidelines is different. When consideration of such status is in issue, the offense of conviction plays a part in determining not only the offense level but also the criminal history category. Thus, § 4B1.1 specifies that a defendant whose criminal history includes two convictions for either controlled substance or violent offenses, as defined in § 4B1.2, if convicted of another such offense, is to be classified automatically at criminal history category VI, regardless of the category that would apply if he had not been convicted of another such offense. Hernandez's criminal history includes both a controlled substance conviction and a crime of violence conviction. The crime of violence, as charged in the indictment, is one that involved a number of weapons which, if considered under the Guidelines, would have warranted an upward depar-

ture. U.S.S.G. § 2K2.2, commentary (n. 2). Moreover, as noted in the presentence report, four of the weapons were semi-automatic weapons that had been special ordered for conversion to fully automatic weapons. Presentence Report ¶ 23. When a defendant with that history commits an offense whose surrounding circumstances, particularly when considered in relation to those past convictions, make it plain that he would be fairly sentenced as a career offender if those surrounding circumstances could be considered, it is entirely consistent with the structure of the Guidelines, including the career offender provisions, to depart upward, at least with respect to criminal history category, to that category specified by the Sentencing Commission for career offenders, category VI, without considering intervening category V.

This is not a matter of Hernandez having done almost enough to qualify as a career offender and therefore being treated as one based on a "near miss." *Cf., Colon,* 905 F.2d at 586. Rather, it is plain that when one considers what the Sentencing Commission itself determined in general to be "relevant conduct," *i.e.,* "acts ... committed ... by the defendant or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction," U.S.S.G. § 1B1.3(a)(1), Hernandez, by employing a weapon in aid of drug trafficking, has done everything necessary to be qualify as a career offender. It is reasonable to depart upward at least to apply the criminal history category of such an offender. Indeed, the Tenth Circuit has held that when a defendant's criminal history category alone as calculated under the Guidelines was insufficient to reflect the seriousness of that history, due to consolidation of several offenses for sentencing purposes, it was appropriate to depart upward and apply the career offender provisions both as to criminal history and as to offense level, and simply to sentence the defendant as a career offender. *United States v. Williams,* 922 F.2d 578 (10th Cir.1990). This case is *a fortiori* from *Williams,* because the career

offender provisions are not being fully applied to Hernandez.

2. Offense Level

■ Hernandez virtually conceded that some upward departure was called for if the surrounding circumstances warranted a finding that he had possessed the weapon in question while engaged in drug trafficking. He proposed a two-point upward departure by analogy to the two points added to the offense of conviction when a weapon is found to have been possessed during a drug offense. U.S.S.G. § 2D1.1(b)(1). However, the Guideline calculation in question determines by how much weapons possession aggravates drug dealing, not by how much drug dealing aggravates weapons possession. Accordingly, the analogy defendant suggests is not apt.

Instead, I think it is reasonable in arriving at an appropriate upward departure to try to approach as closely as possible the standards set by those who have fixed the sanctions for what Hernandez actually did. This task is made somewhat difficult by the Sentencing Guidelines' reliance on the type of substance and its weight in fixing the punishment for a controlled substance offense, U.S.S.G. § 2D1.1(c); but it is not impossible. Again, I am mindful of the Circuit's warning to avoid the injustice of permitting "an act need be proven only by a preponderance of evidence ... [to] result in more punishment than would be called for if the act had been proven beyond a reasonable and had resulted in conviction." *Kim,* 896 F.2d at 684.

I have concluded based on the proximity of the money, the scales, the beeper, the portable telephone and the weapon that the money, more than $35,000, obviously was the proceeds of drug trafficking. As noted above, I believe it is reasonable also to conclude based on both the amount of money and on the presence of the triple beam scale that Hernandez was dealing in what the government has called a "white powder" drug of the sort usually weighed out on such a sensitive scale—*i.e.,* cocaine or heroin. Giving Hernandez the benefit of applying the lowest Guideline for a white

powder offense would yield an offense level of 12, the level applicable to less than 25 grams of cocaine or less than 5 grams of heroin. U.S.S.G. § 2D1.1(c). Here it bears mention that regardless of whether it was heroin, cocaine or the only other controlled substance suggested by Hernandez's criminal history—marijuana, that Hernandez was purveying, an offense level of 12 is lower than the amount of money found in his apartment would suggest. Applying the highest purchase prices I have located in recent reported cases, $35,000 would buy: a kilo and a half of cocaine, *United States v. Bruno*, 873 F.2d 555, 557 (2d Cir.1989) ($23,000 per kilo), a level 26 offense; 87.5 grams of heroin, *United States v. Garcia–Rosa*, 876 F.2d 209, 214 (1st Cir. 1989) ($50,000 per ⅛ kilo), a level 24 offense; or 15.8 kilos of marijuana, *Campbell*, 874 F.2d at 840 ($1000 per pound), a level 16 offense.

As stated in open court, the circumstances of his plea and conversations with government agents as described by his capable counsel lead me to conclude, hesitantly, that Hernandez merits a two-point reduction of the offense level for acceptance of responsibility. U.S.S.G. § 3E1.1. This reduction has been conferred although he was not as candid as he might have been about the offense of conviction in an initial conversation with the Probation Office, a shortcoming for which the government has urged me not only to deny the two-point reduction but also to add two points for obstruction. U.S.S.G. § 3C1.1 (n. 3(h)). That yields an offense level of 10, with a range of 24–30 months, and I have applied the high end of that range, or 30 months.

■ To that 30 months I have added the sentence that Congress has made applicable by 18 U.S.C. § 924(c)(1) to a defendant who uses a weapon in the course of committing a drug offense, five years. The location of the loaded .357 magnum in close proximity to the cash, the scale, the beeper and the telephone make it apparent at least by a preponderance of the evidence that the weapon was being used in connection with a drug trafficking crime. In fact, the Second Circuit has held that the same

weapon—a .357 magnum, found in the same location—under a mattress, under closely analogous circumstances—when other indicia of narcotics dealing were present in an apartment, justified a finding beyond a reasonable doubt that an occupant of that apartment had "used" the weapon in relation to a drug trafficking crime within the meaning of the statute. *United States v. Torres*, 901 F.2d 205, 217–18 (2d Cir.1990). Although this portion of the sentence has been drawn from outside the Sentencing Guidelines, that should not make it unlawful. Mandatory sentences apply even after the advent of the Sentencing Guidelines, U.S.S.G. § 5G1.1(b), and the statute has the pronounced advantage of providing a standard set by Congress directly. *See, Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 683, 102 L.Ed.2d 714 (1989) (Scalia, J., dissenting, referring to the Sentencing Commission as "a sort of junior-varsity Congress").

Nor do I believe that this procedure is barred by *United States v. McCall*, 915 F.2d 811 (2d Cir.1990), where the Court of Appeals held that the applicable Guidelines section must be determined by the offense of conviction, not another offense. There, the Court noted specifically that the sentencing judge "did not intend to depart upward from the Guidelines range." 915 F.2d at 815. Accordingly, *McCall* does not appear to speak to a case such as this where a sentencing court has departed upward.

Thus, the aggregate prison sentence imposed on Hernandez is 90 months. I believe this sentence is reasonable when one considers that the maximum term of imprisonment for the offense to which Hernandez pleaded guilty is 10 years, and that if Hernandez had been sentenced as a career offender, albeit one to whom a two-point credit had been given for acceptance of responsibility, the sentencing range would have been 84–105 months. If in fact the touchstone of upward departure is reasonableness, *United States v. Correa–Vargas*, 860 F.2d 35, 36–37 (2d Cir.1988), Hernandez has received a reasonable sentence.

The terms of supervised release, the mandatory special assessment, and other necessary findings are set forth in the judgment.

SO ORDERED: