**UNITED STATES of America**

v.

**Calvin Lee TIDSWELL.**

**Crim. No. 90–00063–P.**

United States District Court,
D. Maine.

June 6, 1991.

---

Thimi R. Mina, Asst. U.S. Atty., Portland, Me., for U.S.

Steven D. Silin, Lewiston, Me., for Tidswell.

## MEMORANDUM OF DECISION

GENE CARTER, Chief Judge.

Defendant Calvin Lee Tidswell pled guilty on January 16, 1991 to both parts of a two-count indictment charging: (1) distribution and possession with intent to distribute cocaine, in violation of 21 U.S.C. sections 841(a)(1) and 841(b)(1); and (2) possession of a firearm by a convicted felon, in violation of 18 U.S.C. sections 922(g) and 924(e)(1). Defendant now objects to two

elements of the presentence report prepared by the United States Probation Office for the District of Maine: (1) the proposed classification of Defendant as a "career offender," pursuant to section 4B1.1 of the United States Sentencing Guidelines; and (2) a proposed enhancement of Defendant's sentence for possession of a firearm during the commission of the offense, pursuant to section 2D1.1(b)(1) of the United States Sentencing Guidelines (hereinafter Guidelines). Because these objections raise threshold questions in the sentencing process, the Court must resolve the relevant legal issues before proceeding to the imposition of sentence.

## I. "CAREER OFFENDER" AND "CRIME OF VIOLENCE"

Section 4B1.1 of the Guidelines provides that

[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. The Government seeks to define Defendant's conviction for possession of a firearm by a convicted felon as a "crime of violence", and thereby use that conviction as the predicate offense for establishing Defendant's career offender status.[1] Defendant argues that possession of a firearm by a convicted felon does not constitute a "crime of violence" as that phrase is defined by section 4B1.2(1)(ii) of the Guidelines and the attendant commentaries. In addition, Defendant argues that classifying Defendant a career offender on

---

1. Defendant does not dispute that he is eighteen years old and that he has previously committed offenses which may be classified as crimes of violence or controlled substance offenses. There is no dispute that Defendant may be classified as a career offender using his present controlled substance offense conviction as the predicate. The import of the disagreement between the Government and Defendant as to which offense will serve as the predicate for

classifying Defendant as a career offender is the effect that choice will have on the eventual sentence. Classifying Defendant as a career offender and using the firearm offense as the predicate for that classification will result in a substantial increase in Defendant's sentence, pursuant to section 4B1.1. Using Defendant's controlled substance offense will result in a less substantial increase in his sentence.

the same grounds as those which formed the basis for his conviction for possession of a firearm by a convicted felon violates the Double Jeopardy and Due Process clauses of the Fifth Amendment, as well as the prohibition on cruel and unusual punishment contained in the Eighth Amendment. The Court need not reach these constitutional questions, since this issue may be resolved by interpretation of the Guidelines.

*A. Defining a "Crime of Violence"*

Section 4B1.2 of the Guidelines defines a "crime of violence" to mean

any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). Application Note No. 2 adds the following explanatory comment:

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth in the count of which the defendant was convicted involved use of explosives or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2, Application Note No. 2.

A few courts have held that the phrase "by its nature" in Application Note No. 2, along with the general interpretive practice with respect to the Guidelines, requires looking only to the statutory language defining the conviction offense to determine whether or not that offense is a "crime of violence." *See United States v. Gonzalez–Lopez,* 911 F.2d 542, 547 (11th Cir.1990)

(adopting *per se* rule that possession of a firearm by a convicted felon is a "crime of violence"); *United States v. O'Neal,* 910 F.2d 663, 666–67 (9th Cir.1990) (same); *United States v. Johnson,* 704 F.Supp. 1398, 1399–1403 (E.D.Mich.1988) (same, discussing identical statutory and interpretive language under the Bail Reform Act); *United States v. Jones,* 651 F.Supp. 1309 (E.D.Mich.1987) (same, also applying the Bail Reform Act). *See also United States v. Speight,* 726 F.Supp. 861, 865–67 (D.D.C. 1989) (adopting *per se* rule that possession of a firearm by a convicted felon *is not* a "crime of violence"); *United States v. Bushey,* 617 F.Supp. 292, 298–300 (D.Vt. 1985) (same).

The Court of Appeals for the First Circuit has adopted a different approach: "when a statute's terms cover separate kinds of behavior only some of which involve elements of a violent crime, the court should look beyond the words of the statute to the indictment (and perhaps to the jury instructions as well)." *United States v. Leavitt,* 925 F.2d 516, 518 (1st Cir.1991) (citing *Taylor v. United States,* —— U.S. ——, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990)). Thus, the First Circuit recognized that certain offenses may always be categorized as "crimes of violence," without looking beyond the face of the statutory language, because some requisite element of those offenses necessarily poses a threat of violence. *See, e.g., United States v. McVicar,* 907 F.2d 1, 1–2 (1st Cir.1990) (discussing the inherent threat of violence in robbery). The offenses enumerated in Application Note No. 2—murder, manslaughter, kidnapping etc.—would each be included in the category of "crime of violence" for this reason.

But the First Circuit also recognized that other offenses may not include any requisite element which necessarily threatens violence. For these offenses, the sentencing court must look beyond the statutory language to the conduct charged in the indictment and to other relevant evidence. *Id.* at 518. The First Circuit has not yet addressed the question of whether possession of a firearm by a convicted felon is an

offense which contains a requisite element which necessarily poses a threat of violence. This is a case of first impression in this court and, apparently, in this circuit.[2]

## B. Relationship between Section 924(e) and Career Offender Status

The United States Sentencing Commission (hereinafter Commission) recently adopted section 4B1.4 which now governs sentencing for defendants who have violated sections 922(g) and 924(e)(1). Although that section is not directly applicable to this proceeding,[3] the newly promulgated section offers valuable insight into the Commission's view of whether a violation of section 924(e) is, *per se*, a "crime of violence." Section 4B1.4 reads, in pertinent part:

**Armed Career Criminal**

(a) A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) [possession of a firearm by a convicted felon] is an armed career criminal.

(b) The offense level for an armed career criminal is the greatest of: ...

    (2) the offense level from § 4B1.1 (Career Offender) *if applicable;* ....

U.S.S.G. § 4B1.4 (effective Nov. 1, 1990) (emphasis added). The italicized language makes clear the Sentencing Commission's view that career offender status pursuant to section 4B1.1 *may not be appropriate for every defendant who is convicted of violating section 924(e).* The question remains under what circumstances would career offender status be inappropriate for a violator of section 924(e).

A defendant convicted of violating section 922(g) must have three previous convictions for violent felonies or serious drug offenses to be subject to the penalties prescribed by section 924(e). 18 U.S.C. § 924(e)(1). A defendant must have at least two prior felony convictions for a "crime of violence" or controlled substance offense to be a career offender under section 4B1.1. U.S.S.G. § 4B1.1. Thus, any defendant subject to the penalties in section 924(e) is necessarily subject to being classified a career offender, assuming both that the defendant is over eighteen years of age and that his violation of section 924(e) is considered to be a "crime of violence." In other words, there are only two circumstances in which career offender status would not *automatically* apply to a defendant subject to section 924(e): (1) the defendant is under the age of eighteen, and (2) there are some circumstances in which violation of section 924(e) is not a "crime of violence."

The Commission cannot have intended only to implicate underage defendants who are subject to section 924(e) when it used the intentionally broad and ambiguous phrase "if applicable." If the Commission intended to implicate only underage defendants, then the Commission would have simply stated an express exclusion of underage defendants in section 4B1.4(b)(2). The more reasonable interpretation of section 4B1.4 is that the Commission intended to suggest that there are circumstances in which a convicted felon possesses a firearm, but does not commit a "crime of violence."

In sum, the Commission's implied intent supports the conclusion reached by the overwhelming majority of the courts considering this issue: determining whether possession of a firearm by a convicted felon constitutes a "crime of violence" requires a fact-specific inquiry into the conduct charged in the indictment to assess whether that conduct "presented a serious potential risk of physical injury to another." *See United States v. Walker,* 930 F.2d 789 (10th Cir.1991); *United States v.*

---

**2.** Neither the Court's research nor the parties' memoranda of law disclose any decisions by the district courts in this circuit addressing this question.

**3.** Section 4B1.4 became effective on November 1, 1990, slightly more than two weeks after Defendant's commission of the offense conduct. This Court, consistent with the dictates of due process and the Rule of Lenity, applies guidelines enacted after the date of a defendant's offense *only* if the newly enacted guidelines would be beneficial to the defendant. *See generally Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); U.S. Const., art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed").

*Goodman,* 914 F.2d 696, 698–99 (5th Cir. 1990); *United States v. Alvarez,* 914 F.2d 915, 917–19 (7th Cir.1990); *United States v. Maddalena,* 893 F.2d 815, 819–20 (6th Cir.1989); *United States v. Williams,* 892 F.2d 296, 303–05 (3d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); *United States v. Thompson,* 891 F.2d 507, 509–11 (4th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990); *United States v. Coble,* 756 F.Supp. 470, 470–75 (E.D.Wash.1991); *United States v. Hernandez,* 753 F.Supp. 1191, 1194–98 (S.D.N.Y.1990). Consistent with this mandate, the Court must assess Defendant's conduct underlying his conviction for possession of a firearm by a convicted felon to determine whether it can be properly described as a "crime of violence."

## C. Findings of Fact on Possession of a Firearm

In the present case, the superseding indictment offers little assistance to the determination of whether Defendant's possession of a firearm was a "crime of violence." [4] The Court, therefore, turns to the description of the events leading to Defendant's indictment for possession of a firearm by a convicted felon as set forth, without objection, in the presentence report, along with the evidence submitted by counsel at the hearing held in this matter on May 23, 1991.

On October 17, 1990, Defendant was in his residence selling cocaine to an undercover agent of the Bureau of Intergovern- mental Drug Enforcement (hereinafter BIDE) and a confidential informant. Defendant's residence is a one-room apartment. After completing a telephone call to his "boss," Defendant informed the undercover BIDE agent of the price for the quantity of cocaine being sold. The undercover agent then left the residence to retrieve the "buy money," and to inform the other agents that the sale had been made and that an arrest was now possible. The undercover agent reentered the apartment alone. Within a few minutes, the undercover agent heard the other agents climbing the stairs to Defendant's apartment. The undercover agent identified himself to Defendant as a police officer and advised Defendant to lay down on the floor. The other agents entered the residence, identified themselves as police officers, and arrested and handcuffed Defendant.

Defendant waived his constitutional rights, and read and signed a form consenting to a search of his apartment. Defendant stated that he could save the agents time by telling them where "everything was." The .22 caliber Berretta handgun was found with a full clip of ammunition, but without a round in its chamber, in a box above the headboard of Defendant's bed.[5] There is no evidence in the record indicating that Defendant ever actually possessed, or even physically touched, the handgun during the time when the undercover BIDE agent, the confidential informant, or the other agents were in the

---

4. The complete text of Count Two of the superseding indictment reads as follows:

> On or about October 17, 1990, in the District of Maine, the defendant, CALVIN L. TIDSWELL having been convicted of crimes punishable by a term of imprisonment exceeding one year under the laws of the State of Maine, that is, the crime of Manslaughter in Docket Number CR–78–187 on January 29, 1979 in the Franklin County Superior Court; the crime of Arson in Docket Number CR–78–266 on January 29, 1979 in the Franklin County Superior Court; the crime of Aggravated Assault in Docket Number CR–86–389 on December 17, 1986 in the Androscoggin County Superior Court; and the crime of Assault on a Police Officer in Docket Number CR–86–267 on December 12, 1986 in the Androscoggin

> County Superior Court, did knowingly receive and possess in commerce and affecting commerce, a firearm and ammunition, that is a Beretta Model 21–A, .22 caliber handgun bearing serial number BAS00355U, and .22 caliber ammunition.

> In violation of Title 18, United States Code, Sections 922(g) and 924(e).

Superseding Indictment (Nov. 15, 1990) (Docket No. 7).

5. There is some evidence in the record that Defendant "identified" the gun. The record is not clear on the question of whether Defendant told the agents about the gun in an effort to assist their search, or identified the gun after the agents' search had already produced it. *See* Transcript of Suppression Hearing at 18–20.

apartment.[6] Further, there is no indication in the record that Defendant made any move to gain actual possession of the handgun, or that he made any threats or statements associated with the handgun.

The courts that have inquired into the conduct underlying a defendant's possession of a firearm and found that a "crime of violence" had been committed were all faced with much more egregious facts than these. In *Goodman,* the evidence showed that

> Goodman, in an intoxicated and agitated state, became involved in an altercation with a pistol, was disarmed, and later returned to the scene of the scuffle with another weapon, the .22 caliber rifle. By his own admission, he was en route to recover the pistol, armed with the rifle and presumably prepared to use it, ...

914 F.2d at 699. In *Alvarez,* the court was "faced with a defendant who struggled with a police officer over a loaded, semi-automatic weapon and managed to injure the officer in the altercation." 914 F.2d at 919. In *United States v. McNeal,* the police had responded to the sounds of two handgun shots by stopping the defendant and searching his car. The search produced a .357 Magnum handgun which smelled like it had just been fired and which contained two empty cartridges. *United States v. McNeal,* 900 F.2d 119, 120–21 (7th Cir. 1990). In *Williams,* the defendant was also intoxicated and had fired the gun at another person at close range after issuing a series of threats. 892 F.2d at 297–98.

The present case is much more closely analogous to those instances in which courts have found that the constructive possession of a firearm by a convicted felon did not constitute a "crime of violence." In *Coble,* the firearm was located under the defendant's mattress. The defendant had made no attempt either to take physical possession of the firearm, or to use or attempt to use the firearm in any way. *Coble,* 756 F.Supp. at 473. In *Hernandez,* a loaded revolver was found under a mattress in the defendant's bedroom. 753

F.Supp. at 1193. Both district courts imposing sentences in these cases held that constructive possession of this sort does not amount to a "crime of violence."

The Court *CONCLUDES* on the basis of its factual findings that Defendant's constructive possession of the handgun did not present a serious potential risk of physical injury to another. Accordingly, Defendant's conviction for possession of a firearm by a convicted felon cannot serve as the predicate offense for a determination that Defendant is a career offender pursuant to section 4B1.1.

## II. ENHANCEMENT FOR POSSESSION OF A FIREARM

Defendant also raises three arguments in support of his objection to the two-level enhancement of his sentence, pursuant to section 2D1.1(b)(1) of the Guidelines, for the "specific offense characteristic" of possession of a dangerous weapon during the commission of the controlled substance offense: (1) relying on section 2K2.4, Application Note No. 2, Defendant argues that the Guidelines disapprove the "double counting" of the presence of firearms in drug crimes; (2) Defendant argues that the facts of this case establish that "it is clearly improbable that the weapon was connected with the offense," and therefore, the enhancement should not apply; and (3) Defendant argues that an enhancement of the sentence for possession of a firearm, when combined with a conviction for possession of a firearm by a convicted felon, effects a violation of the Double Jeopardy clause.

▮▮▮ Each of Defendant's arguments may be dispatched with little difficulty. First, the commentary for one guideline is not transferrable to another, except when there is an express instruction to the contrary in the applicable guidelines. *United States v. Smallwood,* 920 F.2d 1231, 1238 (5th Cir.1991). *See also United States v. Anders,* 899 F.2d 570, 580 (6th Cir.1990). Section 2K2.4 and its accompanying com-

---

6. The parties stipulated at the sentencing hearing that Defendant constructively possessed the

handgun for protection against a rival drug dealer.

mentaries expressly apply only to violations of 18 U.S.C. sections 924(c) and 929(a). *See* U.S.S.G. § 2K2.4, Application Note No. 2 ("Where a sentence *under this section* is imposed...."). Thus, Defendant's effort to find a broadly applicable principle in these commentaries is misplaced. Second, Defendant stipulated at his sentencing hearing that the handgun was constructively possessed for protection from a rival drug dealer. The handgun was a tool of Defendant's drug trafficking. As a result, the Court *FINDS* that the handgun was sufficiently associated with the offense contained in Count One to justify a two-level enhancement of Defendant's sentence. Accordingly, the two-level enhancement is proper in sentencing Defendant under the Guidelines.

■ Defendant's constitutional argument is similarly unavailing. The Double Jeopardy clause protects defendants against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969). However, this protection is "limited to ensuring that the total punishment did not exceed that authorized by the legislature." *United States v. Halper*, 490 U.S. 435, 450, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487 (1989). The purpose of the protection is "to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas*, 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989). Section 924(e) imposes a minimum mandatory sentence of fifteen years to life imprisonment. *See* 18 U.S.C. § 924(e)(1). The two-level enhancement required by section 2D1.-1(b)(1) does nothing more than narrow the range within which the Court may sentence Defendant for possession of a firearm. Since the resulting sentence will necessarily be within the sentencing range established by Congress in section 924(e), there cannot be a double punishment violative of the Constitution. *See Alvarez*, 914 F.2d at 920; *Williams*, 892 F.2d at 304–05.

Accordingly, the Court will impose a two-level enhancement for possession of a firearm. The Court hereby RESERVES decision on all other matters related to the sentencing of Defendant pending the recommencement of the sentencing hearing.

So ORDERED.