891 F.2d 1063
 29 Fed. R. Evid. Serv. 313
 The UNITED STATES
v.
Joseph F. ROSA, William A. Kostrick, Martin R. Antonelli,
Daniel J. Campbell, Paul F. Connelly, Jr., William Anthony
Dadamo "Machine Gun Tony", Vivian Davis, Jorge Diaz, William
Edgar Gates "Butch", Donna Marie George, Susan Francis
George, Raymond G. Ily, Gary Francis Jones "Spanky", Larry
H. Linn, James Luketic "Lukey", Victor E. Marchitello,
Richard Wayne Naugle, Mark D. Nicklow, Robert William Noble,
Timothy O'Connor, Perry C. Perrino, Ronald R. Plisco "Sam
Catalano", "Fat Sam", Charles H. Readel, Richard Reshenberg,
Dino Romano, William Duane Smith, Richard A. Stefanik
"Wrinkle", Diania Lynn George Wertz "Dee Dee Wertz". (Two Cases)
Appeal of William KOSTRICK, in No. 88-3692.
Appeal of Dino ROMANO, in No. 88-3717.
Appeal of Perry C. PERRINO.
 Nos. 88-3692, 88-3693 and 88-3717.
 United States Court of Appeals,
Third Circuit.
 Argued May 26, 1989.
Decided Dec. 8, 1989.
 
 Jack K. O'Malley (argued), Pittsburgh, Pa., for appellant Kostrick in No. 88-3692.
 Gary B. Zimmerman (Argued), Jane Campbell Moriarty, Pittsburgh, Pa., for appellant Romano in No. 88-3717.
 Charles D. Sheehy, Acting U.S. Atty., Paul J. Brysh (Argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.
 Stanton D. Levenson, Pittsburgh, Pa., for appellant in 88-3693.
 Bruce A. Carsia, Pittsburgh, Pa., for amicus curiae.
 Before BECKER, STAPLETON and GARTH, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 I.
 
 1
 Defendants Kostrick, Romano, Perrino and twenty-five others were charged in a one hundred and thirteen count indictment with various offenses involving a large-scale conspiracy to distribute cocaine. All those indicted, with the exception of Kostrick and Romano, eventually pleaded guilty to cocaine-related offenses. In particular, defendant Perrino, who at the time of his offense was an assistant district attorney for the Commonwealth of Pennsylvania, pleaded guilty to one count of cocaine distribution.
 
 
 2
 Defendants Kostrick and Romano pleaded not guilty to all charges. In their ensuing jury trial, the government called twenty-two witnesses, twenty of whom testified that they observed the defendants participate in the purchase or sale of cocaine. In their defense, Kostrick and Romano focused exclusively on attempting to undermine the credibility of the government's witnesses. At the conclusion of the two-week trial, the jury returned guilty verdicts against both defendants. Kostrick was found guilty of one count of conspiracy to distribute cocaine, one count of a continuing criminal enterprise to distribute cocaine, seven counts of possession of cocaine with the intent to distribute, and six counts of tax-related offenses. Romano was found guilty of one count of conspiracy to distribute cocaine, one count of possession of cocaine with the intent to distribute and two counts of tax offenses. Following sentencing, Kostrick, Romano and Perrino appealed. We have jurisdiction under 28 U.S.C. § 1291.
 
 
 3
 The defendants tender six issues: (1) whether the district court erred by denying a request for a bill of particulars specifying the identities of the "controlled individuals" in the alleged continuing criminal enterprise; (2) whether the district court improperly admitted into evidence a government witness's plea agreement which contained the witness's promise to take a polygraph examination; (3) whether the district court improperly excluded cross-examination of a government witness concerning criminal conduct for which the witness had not been convicted; (4) whether Romano was correctly sentenced on his conspiracy conviction under the new sentencing guidelines despite his claim that he withdrew from the conspiracy before the effective date of the guidelines; (5) whether the district court violated Federal Rule of Criminal Procedure 32(c)(3)(D) by neither resolving nor expressly disavowing reliance upon the prosecutor's disputed version of the offense contained in Perrino's presentence report; and (6) if the district court did err in sentencing Perrino, whether we should direct that Perrino's case be assigned to a new judge for resentencing. We consider each of these issues in turn.
 
 II.
 A.
 
 4
 Among defendant Kostrick's alleged offenses was his involvement in a continuing criminal enterprise ("CCE") to possess cocaine with the intent to distribute in violation of 21 U.S.C. § 848. Under § 848(c), an individual participates in a CCE if he commits a predicate drug-related offense amounting to a felony and he undertakes that offense as "part of a continuing series of violations ... in concert with five or more other persons with respect to whom [he] occupies a position of organizer, a supervisory position, or any other position of management...." In response to this charge, Kostrick moved prior to trial for a bill of particulars under Rule 7(f), Fed.R.Crim.P., identifying the names and addresses of the individuals he had allegedly managed in the CCE. The district court denied the motion without explanation. Kostrick contends that the denial of that motion violated Rule 7(f) and requires a new trial.[1]
 
 
 5
 Prior to 1966, Rule 7(f) limited bills of particulars to those situations in which the moving party demonstrated cause for his request. By amending the rule in 1966 to eliminate the cause requirement, the drafters expressly sought "to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Fed.R.Crim.P. 7 advisory committee's note to 1966 amendment. Consistent with this shift, the case law now recognizes that motions for a bill of particulars should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial. E.g., United States v. Addonizio, 451 F.2d 49, 62-63 (3d Cir.1971), cert. denied, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). At the same time, these decisions recognize that trial judges must be allowed to exercise broad discretion in order to strike a prudent balance between the defendant's legitimate interest in securing information concerning the government's case and numerous countervailing considerations ranging from the personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so. See United States v. Tarvers, 833 F.2d 1068, 1076 (1st Cir.1987); United States v. Cole, 755 F.2d 748, 760 (11th Cir.1985); United States v. Arenal, 768 F.2d 263, 268 (8th Cir.1985).
 
 
 6
 While we have found only one CCE case reversing a conviction because of the government's failure to supply sufficient information regarding supervisees in response to a motion for a bill of particulars, United States v. Chavez, 845 F.2d 219 (9th Cir.1988), all of the federal appellate cases addressing similar issues have explicitly or implicitly recognized that the defendant has a legitimate interest in knowing how the government intends to prove that he or she supervised the requisite number of persons. When convictions have been upheld despite the government's failure to provide the requested information, invariably it has been either because the information otherwise available to the defendant at the pretrial stage was found to give adequate notice of the identity of the supervised persons or because no prejudice or surprise was shown to have resulted from the denial of the information sought. United States v. Maull, 806 F.2d 1340 (8th Cir.1986) (pretrial information sufficient); United States v. Burt, 765 F.2d 1364 (9th Cir.1985) (pretrial information sufficient and no prejudice); United States v. Hawkins, 661 F.2d 436 (5th Cir.1982) (same); United States v. Howard, 590 F.2d 564 (4th Cir.1979) (no prejudice from allegedly insufficient bill of particulars).
 
 
 7
 The exercise of control and the requisite number of controlled parties are essential elements of a CCE offense and ones that normally play an important role in a CCE case. In the absence of important countervailing concerns, we believe that the defendant should be advised prior to trial of the individuals claimed by the government to be controlled persons so that he or she may prepare a defense and avoid surprise at trial.
 
 
 8
 Because the trial judge in this case did not explain why he denied Kostrick's motion and because the reason for that denial is not otherwise apparent from the record, we find ourselves unable to determine whether there has been an abuse of discretion. As a result, we have considered remanding the case with a direction that an explanation be provided. Because Kostrick failed to demonstrate any prejudice, however, we have concluded that a remand is unnecessary. As we noted in Addonizio, 451 F.2d at 49, a defendant cannot successfully attack the denial of a bill of particulars unless he demonstrates both that the trial court abused its discretion in denying relief and that surprise or other prejudice resulted from his having been deprived of the requested information at the pre-trial stage. See also United States v. Burt, 765 F.2d at 1364. In this case, Kostrick failed to show or, indeed, to claim a specific surprise or other prejudice. Neither before us, nor before the trial court in the post-trial proceedings did Kostrick's counsel point to any "surprise" evidence or to anything he would have done differently had he known earlier what he learned at trial. Kostrick's brief asserts only that "Mr. Kostrick did not know the nature of the Government's case and, thus, could not adequately prepare his defense." Brief of Appellant Kostrick at 11. This would not warrant a reversal even if the denial of the bill of particulars was an abuse of discretion. United States v. Addonizio, 451 F.2d at 65.
 
 B.
 
 9
 Larry Linn, a government witness who pleaded guilty to conspiracy and possession charges, testified that he had been Romano's partner in a cocaine distribution enterprise and that he had witnessed Romano purchase and sell large quantities of cocaine. On direct examination, the prosecutor questioned Linn about the plea agreement he had entered with the government. Linn responded that he had agreed to plead guilty to two counts--one for conspiracy and one for possession of cocaine with the intent to distribute--and to cooperate with the government, but that the government had made no promises regarding his maximum sentence. On cross, defense counsel emphasized Linn's incentives to incriminate the defendants and elicited Linn's confession that he had failed to file a federal income tax return in 1982 and had not brought this fact to the government's attention. On redirect, the government asked Linn whether the plea agreement expressly reserved the government's right to pursue Linn for any offense not explicitly included in the plea agreement and then offered the agreement itself as proof of the reservation. Counsel for Kostrick and Romano objected to the admission of the agreement because it contained a provision in which Linn agreed to take a polygraph examination upon the government's request.[2] Their objection was overruled and the agreement, along with the other exhibits, went with the jury to the jury room. No one referred to the polygraph clause in the presence of the jury during trial.
 
 
 10
 Kostrick and Romano argue that the admission of the clause regarding a commitment to submit to a polygraph test "impermissibly bolstered" Linn's credibility and that they therefore deserve a new trial. They point to cases in the Eleventh and Fourth Circuits that support their position. See United States v. Hilton, 772 F.2d 783, 786 (11th Cir.1985) ("Evidence of plea agreements containing provisions that the government's witnesses have agreed to take polygraph tests to verify trial testimony constitutes improper bolstering of the witnesses' testimony."); United States v. Porter, 821 F.2d 968 (4th Cir.1987) (adopting Hilton ), cert. denied, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988); United States v. Herrera, 832 F.2d 833, 835 (4th Cir.1987) (same). In this Circuit, the admissibility of a witness's commitment to take a polygraph examination is a question of first impression.
 
 
 11
 Based on the facts of this case, however, we find it unnecessary to resolve this issue. Assuming that the admission of a witness's agreement to take a polygraph examination can be error, in the context of this case we hold that it was not reversible error because we find it "highly probable that the evidence ... did not contribute to the jury's judgment of conviction" with respect to either Kostrick or Romano. U.S. v. Echeverri, 854 F.2d 638, 646 (3d Cir.1988) (quoting Government of the Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir.1976)).
 
 
 12
 The admission of Linn's polygraph commitment cannot have prejudiced Kostrick since Linn did not in any way incriminate him. Indeed, Linn testified that he did not know Kostrick.
 
 
 13
 Turning to Romano, we assume, as we think we must, that the jurors read the Linn plea agreement which, along with forty other exhibits, went with them to the jury room. Nevertheless, we note that the challenged evidence was but a small portion of one exhibit in a two-week trial and that its content was not deemed worthy of comment by either side. We further note that it pertained to only one of many witnesses and that even with respect to that one witness, there was no evidence that a polygraph examination was either requested or conducted and no polygraph results were placed before the jury.
 
 
 14
 When a single witness's agreement to take a polygraph exam receives absolutely no attention in an extensive trial, we doubt that evidence of such an agreement holds a potential for significant prejudice in any factual setting. Here, we have the added circumstance that the government's case against Romano was a strong one. Based on the strength of the government's case and the low profile and marginal significance of the challenged evidence, we possess the required "sure conviction that the error [if any] did not prejudice the defendant." U.S. v. Grayson, 795 F.2d 278, 290 (3d Cir.1986).
 
 
 15
 Several co-conspirators other than Linn, including Ernest Rockwell, Marvin Droznek, Frank Amato and Joseph Rosa, testified as to Romano's cocaine trafficking. This testimony was corroborated in significant respects by wire surveillance, physical surveillance and the testimony of apparently disinterested witnesses. Droznek testified that he made arrangements through Bobby George in September of 1986 to sell a kilo of cocaine to Romano. On September 30, 1986, a telephone call between Romano and George was intercepted in which they discussed a purchase of "carpet." In a second intercepted call the next day, Droznek spoke to George about George seeing "Romano to pick up that money that I borrowed." Later that day, George was observed by law enforcement personnel leaving Romano's store with a box. Corroborating testimony was also given by Michelle Katone, Bobby George's girlfriend, and by Susan George, Bobby George's mother. Each testified to personally observing Romano purchasing cocaine from George.
 
 C.
 
 16
 Romano argues next that, with respect to his fifteen-year conspiracy sentence, the district court judge improperly relied on the new sentencing guidelines despite Romano's claim that he withdrew from the conspiracy prior to their effective date. Application of those guidelines to his case, he contends, would violate the constitutional prohibition against ex post facto laws because the conduct for which he was convicted ended prior to the effective date of the guidelines. Romano concedes that the district court judge was bound to apply the law in effect at the conclusion of the offense in question, United States v. Goldberger, 197 F.2d 330 (3d Cir.), cert. denied, 344 U.S. 833, 73 S.Ct. 40, 97 L.Ed. 648 (1952), and that most of those charged in the indictment continued to participate in the conspiracy well into new statute's effective period. As to those individuals, Romano acknowledges that the new guidelines provided the appropriate basis for sentencing. He argues that his case is different, however, because there is no evidence that he did anything to further the conspiracy after late 1986 and, accordingly, he was not a part of the conspiracy when the guidelines went into effect on November 1, 1987.
 
 
 17
 Under the substantive law of conspiracy in this Circuit, one who willfully enters an agreement to commit a crime remains a participant in the agreement unless and until he communicates or otherwise objectively manifests a decision to renounce the agreement. United States v. Steele, 685 F.2d 793 (3d Cir.), cert. denied, 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982). This rule is based in part on the fact that the social threat created by a person's participation in a criminal conspiracy continues, even without his active participation, so long as the co-conspirators believe that he remains committed to the criminal venture and available for future support.
 
 
 18
 Romano failed to tender any evidence that he had affirmatively renounced the conspiracy prior to November 1, 1987. In the absence of any such evidence, under the law as it existed both before and after the effective date of the guidelines, the jury and the court were entitled to conclude that Romano chose to remain a culpable member of the conspiracy after November 1, 1987. United States v. Steele, 685 F.2d at 793. Thus, this is not a case in which the application of a new law will either render criminal that which was innocent when done or impose sanctions that were ineffective during the culpable conduct. Compare United States v. Gibbs, 813 F.2d 596 (3d Cir.) (The ex post facto clause forbids "the imposition of a law which purports to make innocent acts criminal after their event, or to aggravate an offense by altering the amount of punishment imposed for its commission, after the fact, to the disadvantage of the accused."), cert. denied, 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987). We therefore conclude that Romano was correctly sentenced for conspiracy under the new guidelines.
 
 D.
 
 19
 Kostrick and Romano both contend that the district court improperly prohibited their cross-examination of Joseph Rosa, a government witness, regarding certain prior criminal conduct because Rosa had not been convicted for that conduct. This simply did not occur. The record reveals that the trial judge, in accordance with Federal Rules of Evidence 608 and 609, prohibited defendants' attorneys from questioning Rosa about criminal conduct for which he had not been convicted because that conduct was not probative of truthfulness or untruthfulness. The judge permitted defense counsel to question Rosa concerning his conspiratorial oath of loyalty to his crime family to the extent that it bore on truthfulness. Similarly, the trial judge correctly allowed cross-examination concerning a fraudulent insurance claim Rosa had filed, since fraud is one of the offenses that bears on a witness's credibility. The only subject on which the trial judge prohibited cross-examination was Rosa's alleged involvement in a bribe of public officials in connection with his insurance fraud. Bribery, however, is not the kind of conduct which bears on truthfulness or untruthfulness. Moreover, even if we regarded bribery as minimally probative of those matters, given the extensive examination permitted on the underlying fraud, we could not say that the trial judge abused his discretion in limiting cross-examination with respect to Rosa's alleged bribery.
 
 E.
 
 20
 Prior to his sentencing, defendant Perrino objected to four specific allegations made by the government which were included in his presentence report. Specifically, Perrino contested (1) that he wanted to establish a cocaine business in New Castle, Pennsylvania, (2) that he distributed any of the cocaine that he received from Marvin Droznek or Gary Jones, (3) that he informed Droznek that Jones had made a statement to the police, and (4) that he gave Droznek federal grand jury tapes in exchange for $5,000. In light of these disputes, Perrino's counsel requested that the government's version of the offense be stricken from the presentence report pursuant to Rule 32(c)(3)(D).[3] The district court denied Perrino's motion, reasoning that because the parties' versions of the offense are not facts within the meaning of Rule 32(c)(3)(D), the court need not expressly disclaim reliance upon nor resolve disputes regarding the government's allegations. Perrino argues on appeal that Rule 32(c)(3)(D) does apply to the allegations made in government's version of the offense and that we must vacate his sentence and remand for resentencing. We agree.
 
 
 21
 Nothing in Rule 32(c)(3)(D) suggests that its provisions do not apply to a presentence report's discussion of the government's version of the case. More important, the district court's reading of Rule 32 would undermine its purpose. As the court stated in Kramer v. United States, 798 F.2d 192 (7th Cir.1986), "[t]he purpose of Rule 32 is to ensure that the defendant's sentence is based on accurate and reliable information and that subsequent recipients of the report are aware of whatever resolutions occurred at sentencing." Id., at 194. Disputed information relevant to sentencing may influence the judge's decision whether it is presented in the presentence report as fact or as information the government believes to be fact. By the same token, the danger that others will subsequently misunderstand the basis for the judge's decision exists whether such information is presented as fact or as information believed by the government to be fact. Accordingly, in whichever manner the disputed information is presented, the purpose of Rule 32 will not be fulfilled unless the court either resolves the dispute or expressly disavows reliance on the disputed information.[4]
 
 
 22
 Because the district court neither resolved the disputed factual issues tendered by Perrino nor gave assurance that the disputed information would not be taken into account, Perrino's sentence must be vacated and his case must be remanded for resentencing in conformity with Rule 32. See United States v. Gomez, 831 F.2d 453, 457 (3d Cir.1987); United States v. Bradley, 812 F.2d 774, 781-82 (2d Cir.1987).
 
 F.
 
 23
 We decline to direct that Perrino be resentenced by a judge other than the one who conducted the initial sentencing. As we once noted in response to a similar request, "we begin our analysis with a presumption that assignment of cases is primarily the province of the district court--a province we will not invade without significant justification." United States v. Baylin, 696 F.2d 1030, 1042-43 (3d Cir.1982). Were this a case in which a district judge had revealed a bias by repeatedly refusing to comply with a rule's clear terms, a deviation from our normal practice might be appropriate. But neither the district judge's misconstruction of Rule 32 nor anything else in this record permits an inference of bias on his part. United States v. Heubel, 864 F.2d 1104 (3d Cir.1989); United States v. Baylin, 696 F.2d at 1042-43.
 
 III.
 
 24
 The judgments with respect to Kostrick and Romano will be affirmed. Perrino's sentence will be vacated and the case will be remanded with the instruction that he be resentenced in a manner consistent with this opinion.
 
 
 
 [1]
 Rule 7(f) provides in relevant part that "[t]he court may direct the filing of a bill of particulars."
 
 
 [2]
 The entire text of the provision reads:
 It is understood that Larry H. Linn must at all times give full, complete and truthful information to the government and testimony before the grand jury and at any pretrial proceeding, trial or trials. In this respect, Larry H. Linn agrees to submit to a polygraph examination to be administered by agents of the government, if in the opinion of this office, such tests are warranted.
 Appendix at 192.
 
 
 [3]
 Rule 32(c)(3)(D) provides:
 (D) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.
 
 
 [4]
 Indeed, the government candidly acknowledged this error in its brief on appeal:
 In this case, the district court's comments just prior to sentencing suggest that the court accepted the government's version. Yet, the court did not make specific findings. Nor did the court append its comments to the pre-sentence report in accordance with Rule 32(c)(3)(D). Thus, we do not oppose this Court's vacating appellant's sentence and remanding the case for resentencing.