UNITED STATES of America

v.

Zoltan TOTH.

Crim. No. 91–102–01.

United States District Court,
E.D. Pennsylvania.

Oct. 23, 1991.

Barry Gross, Departmental Attorney, Philadelphia Strike Force, Philadelphia, Pa., for plaintiff.

John Peter Karoly, Allentown, Pa., for defendant.

## OPINION

VAN ANTWERPEN, District Judge.

On October 4, 1991, in Easton Pennsylvania, this court, sentenced the defendant, Zoltan Toth, to eighteen years imprisonment for four drug-related convictions. After reviewing the testimony presented at trial, and after hearing counsels' arguments, in particular defendant's objections to the presentence report, the court made specific findings on the record and imposed sentence pursuant to the federal sentencing guidelines. Given the severity of the defendant's sentence, we feel compelled to issue this opinion to ensure that the defendant's rights are fully protected and that

his untimely objections [1] to the presentence report are nevertheless given full consideration.

## FACTUAL BACKGROUND

On June 14, 1991 the defendant, Zoltan Toth, was convicted before the United States District Court for the Eastern District of Pennsylvania of conspiring to manufacture phenyl-2-propane (P2P), possessing P2P with the intent to distribute, possessing P2P with the intent to manufacture methamphetamine, distributing P2P, manufacturing P2P, and distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1); importing P2P in violation of 21 U.S.C. §§ 952, 960 and 18 U.S.C. § 2; distributing two gallons of P2P in violation of 21 U.S.C. § 841(a)(1); and importing P2P in violation of 21 U.S.C. §§ 952, 960 and 18 U.S.C. § 2.

At trial, the government presented evidence of the following drug operation.[2] Roland Boyer and Philip Roman, residents of the Allentown, Pennsylvania area, considered a drug manufacture/importation scheme whereby P2P would be manufactured in Canada, where it was legal, and imported into this country where it would be used to manufacture and distribute methamphetamine. Unable to finance the operation, they approached the defendant, Zoltan Toth, who owned a knitting mill in Allentown and who agreed to fund the operation.

In July, 1986, Pierre Couture agreed to manufacture P2P in Canada. The defendant and Couture met to discuss the operation several times at Toth's textile mill in Allentown and, on at least one occasion, at Couture's laboratory in St. Remy, Canada.

From July to September 1987, the defendant sent money to Couture who attempted to make P2P at several Canadian locations. During that period, the defendant and David Leininger, one of the distributors for the operation, received approximately four (4) gallons of P2P.

In December, 1987, the defendant, Roman, and Couture discussed making methamphetamine in addition to P2P and moving the laboratory to Pennsylvania. The defendant wanted the laboratories moved to Pennsylvania because he had great difficulty accounting for the money he had sent to Canada. In late December, 1987, Louis Steven Primavera arranged to use Wallace Brooks' house for the first Pennsylvania laboratory, and the defendant contributed $4,000 for glassware and chemicals. Leininger, Primavera, Couture, and Roman manufactured approximately one and a half (1.5) gallons of P2P and one and a half (1.5) pounds of methamphetamine at the first laboratory. In January, 1988, the laboratory moved to a rented house in Brodheadsville, Pennsylvania. Leininger, Primavera, Couture, and Roman manufactured approximately eight (8) gallons of P2P at the second laboratory.

On February 10, 1988, Roman was arrested by an undercover state police officer when he attempted to sell methamphetamine which had been manufactured at Brook's house. Police later searched the laboratory and arrested Couture. There is no further evidence of the conspiracy after this point.

In March, 1991, a grand jury returned a twelve count indictment against the defendant, Leininger, Boyer, Primavera, and Brooks. On June 14, 1991, following a five-day jury trial in Easton, Pennsylvania,

---

1. On July 29, 1991, the United States Probation Office issued a presentence report for the defendant Zoltan Toth. At the sentencing hearing on October 4, 1991, the defendant raised for the first time several objections to the presentence report and filed an untimely Sentencing Memorandum. *See* Eastern District of Pennsylvania, Standing Local Order, Criminal Form 37 (requiring that objections to a presentence report be filed 15 days after issuance of the report) (promulgated pursuant to Federal Sentencing Guidelines § 6A1.2). While we are mindful

that, following the trial the defendant retained new counsel, the probation office sent a letter, dated August 5, 1991, to new counsel notifying counsel that all objections to the report were due on August 19, 1991. Accordingly, we find no excuse, and counsel offered none, for the untimeliness of these objections.

2. For citations to the record see Transcript of Toth Trial, Testimony of Pierre Couture, June 11, 1991, afternoon session; Testimony of David Leininger, June 12, 1991, afternoon session.

the defendant, Zoltan Toth, was convicted on four drug-related charges. At that time, the court ordered that a presentence investigation be completed by the United States Probation Office. No post-trial motions were filed in this case. On October 4, 1991, after reviewing arguments of both counsel, the presentence report, the testimony presented at trial, and the federal sentencing guidelines, this court sentenced the defendant, Zoltan Toth, to eighteen (18) years imprisonment.

## DISCUSSION

The defendant, Zoltan Toth, raises four objections to the presentence report. First, the defendant argues that federal sentencing guidelines are not applicable to the instant sentencing since there is no evidence that the defendant engaged in any criminal activity after November 1, 1987. Second, the defendant argues that an application of the guidelines, having been amended since his criminal activity, violates the ex post facto clause of the Constitution. Third, the defendant argues that, pursuant to the Sentencing Guidelines §§ 1B1.3 application note 1 and 3B1.2, the probation office miscalculated the defendant's offense level. And finally, the defendant argues that, pursuant to 18 U.S.C. § 3553(b) and Sentencing Guidelines §§ 3B1.2, 5K2.0, and 5F1.2, the circumstances of this case warrant, at least, a downward departure of four (4) levels for minimal participation in the conspiracy, and, at best, a complete departure from the guidelines and a sentence of home detention. As discussed below, we find no merit to these objections.

### 1. Applicability of the Sentencing Guidelines.

■ A district court is bound to apply the law in effect at the conclusion of the offense in question. *United States v. Goldberger*, 197 F.2d 330, 331 (3d Cir.), *cert. denied*, 344 U.S. 833, 73 S.Ct. 40, 97 L.Ed. 648 (1952). In the case of a conspiracy extending beyond November 1, 1987, the effective date of the sentencing guidelines, a convicted conspirator is subject to the sentencing guidelines, absent evidence that he affirmatively renounced the conspiracy prior to November 1, 1987.[3] *United States v. Rosa*, 891 F.2d 1063, 1069 (3d Cir.1989).

■ The defendant has failed to tender any evidence that he affirmatively renounced the conspiracy prior to November 1, 1987. In fact, contrary to the defendant's contentions, the record clearly demonstrates the defendant's continued participation in the conspiracy managing, setting-up, and financing the Pennsylvania laboratories, well into December, 1987 and January, 1988. From the testimony presented at trial, there is no question that the conspiracy continued, at a minimum, until February, 1988 when Roman and Couture were arrested. Accordingly, we find that the conspiracy count did extend past November 1, 1987 and that we are bound by the sentencing guidelines in imposing sentence in this case.

### 2. The Ex Post Facto Clause does not Preclude Application of the Sentencing Guidelines.

■ Under the ex post facto clause of the United States Constitution, a sentencing court cannot apply revised sentencing guidelines which would result in an increased sentence for crimes committed before the effective date of an amendment. *Miller v. Florida*, 482 U.S. 423, 435, 107 S.Ct. 2446, 2454, 96 L.Ed.2d 351 (1987). While there have been numerous amendments to the guidelines since February, 1988, when Roman was arrested, contrary to the defendant's unsupported allegations, none of the provisions on which this court relied, have been amended since the conclusion of the conspiracy to include more puni-

---

**3.** Under the substantive law of conspiracy in this Circuit, one who willfully enters an agreement to commit a crime remains a participant in the agreement unless and until he communicates or otherwise objectively manifests a decision to renounce the agreement. *United States v. Steele*, 685 F.2d 793, 803–4 (3d Cir.), *cert. denied*, 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982).

tive provisions.[4] Accordingly, we find no violation of the ex post facto clause and proceed to apply to the existing sentencing guidelines to the defendant's conviction.

### 3. Computation of Defendant's Offense Level.

■ Pursuant to § 3D1.1 of the sentencing guidelines, when a defendant has been convicted of more than one count, the court shall group "[a]ll counts involving substantially the same harm" together and then determine the offense level applicable to the group. "A count charging a conspiracy ... and a count charging any substantive offense that was the sole object of the conspiracy ..." are "counts involving substantially the same harm," and as such, should be grouped together for purposes of determining a defendant's offense level. Sentencing Guidelines § 3D1.2(b)(1) citing 28 U.S.C. § 994(l), (2). Since all counts of Zolton Toth's conviction arise from the conspiracy to manufacture, possess, and distribute P2P and methamphetamine, all four counts will be grouped together for purposes of determining defendant's offense level.

■ Pursuant to § 1B1.3 of the sentencing guidelines, the defendant's base offense level will be computed based on "all acts and omissions committed ... by the defendant ...," and in the case of a conspiracy, the defendant's offense level will also include conduct of co-conspirators taken in furtherance of the conspiracy provided that the conduct "was reasonably foreseeable [to] the defendant." Sentencing Guidelines §§ 1B1.3(a)(1) and 1B1.3 application note 1. Therefore, when a conviction

for conspiring to violate the federal drug statutes is involved, the trial court may attribute the total amount of drugs involved in the conspiracy to the defendant for purposes of sentencing. *United States v. Foote,* 898 F.2d 659, 667 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 81 (1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 342, 112 L.Ed.2d 307 (1991); *United States v. Pierce,* 893 F.2d 669, 678 (5th Cir.1990). It is irrelevant whether or not the defendant had actual possession of the drugs; the court need only find that the defendant knew or should have known of the quantity of drugs manufactured, possessed, or distributed in furtherance of the conspiracy. *United States v. Williams,* 897 F.2d 1034, 1041 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991) (citing *United States v. Warters,* 885 F.2d 1266, 1273 (5th Cir.1989); *United States v. Holland,* 884 F.2d 354, 358 (8th Cir.), *cert. denied,* 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989); *United States v. Guerrero,* 863 F.2d 245, 249 (2d Cir.1988)).

■ The defendant argues that based on the testimony at trial, he possessed, at best, no more than one quart of P2P. The defendant argues further that there is no evidence to support a finding that he was aware of the quantity of drugs manufactured and delivered by Couture or of the quantities manufactured and distributed from the Pennsylvania laboratories. Absent evidence that the defendant ever possessed more than one quart of P2P and absent evidence that the defendant ever visited the Pennsylvania laboratories, the defendant argues that he can only be held

---

4. The defendant boldly asserts that there have been numerous more punitive amendments since the conclusion of the conspiracy but fails to cite one, largely because there are none. In sentencing, this court relied on §§ 1B1.2, 1B1.3, 2D1.1, 3D1.1, 3D1.2, 3D1.3, and Ch. 5, Pt. A of the sentencing guidelines. Amendments to these provisions do nothing more than correct cross-references and clerical errors, make editorial improvements, or clarify the guidelines or commentary. *See* United States Sentencing Commission, *Guidelines Manual,* Appendix C, amendments 3, 19–21, 45, 76–78, 123–124, 126–134, 253–257, 270, and 302–303.

The only substantive changes affect §§ 2D1.1 and 3D1.2 and have no bearing on this case. Section 2D1.1 expands the drug table to reflect offenses involving extremely large quantities of controlled substances. The defendant's base offense level for at least ten (10) kilograms and less than thirty (30) kilograms of methamphetamine is thirty-six (36), with a sentencing range from 188 to 235 months, under both the original and the present amendment. *Id.,* Appendix C, amendment 125. *Substantive amendments to* § 3D1.2 relate to bribery, an offense not at issue in this case. *Id.,* Appendix C, amendment 121.

accountable for those drugs in his possession.

Having reviewed the record presented at trial, we find that the defendant should be responsible for all drugs manufactured, possessed, and distributed by the conspiracy because he acted as one of the conspiracy's "ring" leaders as well as the major financier of the operation. The fact that the defendant may never have possessed more than one quart of P2P is irrelevant. The testimony is clear that the defendant helped set up and finance the operation in Canada, from which at least four (4) gallons of P2P were imported. The testimony shows further that he visited the laboratory and had numerous contacts for a long period of time with Couture, Boyer, and Leininger concerning what was going on at the laboratories. The defendant was the chief financier and driving force behind moving the laboratories to Pennsylvania, from which eight and one-half (8.5) gallons of P2P were manufactured and one and one-half (1.5) pounds of methamphetamine were produced.

Cognizant of the fact that, for sentencing purposes, the court's factual findings need only be based on a preponderance of the evidence, *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir.1989), and that the court may rely on any evidence it finds to present "sufficient indicia of reliability," *United States v. Sciarrino*, 884 F.2d 95, 97 (3d Cir.), *cert. denied*, 493 U.S. 997, 110 S.Ct. 553, 107 L.Ed.2d 549 (1989); *see also* Sentencing Guidelines § 6A1.3; we find that the defendant, Zoltan Toth, knew or should have known that the Canadian and Pennsylvania laboratories were not only capable of, but did in fact produce thirteen and one-half (13.5) gallons of P2P and one and one-half (1.5) pounds of methamphetamine.[5] Accordingly, we find that the de-

fendant is subject to a base offense level of thirty-six (36), pursuant to § 2D1.1(a)(3) of the sentencing guidelines, for violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. §§ 952 and 960, involving at least ten (10) kilograms but less than thirty (30) kilograms of methamphetamine.[6]

*4. Defendant's Conviction does not Warrant Departure from the Guidelines.*

▮ The defendant argues that, pursuant to 18 U.S.C. § 3553(b) and Sentencing Guidelines §§ 3B1.2, 5K2.0, and 5F1.2, the circumstances of this case warrant, at least, a downward departure of four (4) levels for minimal participation in the conspiracy, and, at best, a complete departure from the guidelines and a sentence of home detention.

We reject the argument that as a minimal participant, the defendant is entitled to a decrease of four (4) levels pursuant to § 3B1.2(a) of the Sentencing Guidelines. This provision is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." Sentencing Guidelines § 3B1.2 application note 1. To be a minimal participant the defendant must demonstrate a "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others...." *Id.*

We find that a downward departure is unwarranted in this case. No one could have sat through the defendant's trial without being impressed with the extent to which the defendant was involved in this drug operation. The defendant was the person who demanded that the laboratories be moved from Canada to Pennsylvania so he could have more control over the operation. The defendant was one of the main

**5.** Moreover, we find these figures to be conservative and if wrong, to weigh in favor of the defendant. Much of the testimony is confusing. Outside of the unequivocal testimony that four (4) gallons of P2P were manufactured in Canada, Couture and Leininger both testified as to varying amounts of early P2P, ranging from two to four quarts, which could have amounted to an additional gallon. Similarly, we have, in our discretion and evaluation of the credibility of the witnesses before us, discounted Couture's

testimony that eighteen (18) gallons of P2P were made in Pennsylvania.

**6.** In passing, the defendant also argues that the presentence report calculations are based on PCP, a stronger substance carrying stiffer sentences, than P2P. This objection is unfounded. The indictment, the testimony at trial, and the presentence report only refer to P2P.

people who decided to make methamphetamine in addition to P2P because it was more lucrative. Most importantly, the defendant was the one who financed this operation. Accordingly, we find that the defendant is not entitled to a decrease of four (4) levels and his offense level under the guidelines remains at thirty-six (36).[7]

■ Similarly, we reject the defendant's arguments that he is entitled to a departure from the guideline-specified sentence for a thirty-six (36) offense level. This section permits a court to depart from a guideline-specified sentence where it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b). The following circumstances, among others, may warrant such a departure: (a) the circumstances under which the offense was committed which mitigated the seriousness of the offense, 28 U.S.C. § 994(c)(2); (b) the lack of actual harm caused by the offense to property or to members of the public, 28 U.S.C. § 994(c)(3); (c) the defendant's family ties and responsibilities, 28 U.S.C. § 994(d)(7); (d) the defendant's community ties, 28 U.S.C. § 994(d)(8); and (e) the lack of defendant's dependence upon criminal activities for a livelihood. 28 U.S.C. § 994(d)(11).

For the reasons stated below,[8] we found no mitigating circumstances in this case which would support departure from the guidelines, and we sentenced the defendant to eighteen (18) years or 216 months imprisonment, a period of incarceration falling midway within the guideline range for the defendant's offense level.[9]

■ As a threshold matter, we note that a guideline range which spans forty-seven (47) months, as in this case, gives a sentencing court a certain amount of discretion in which to account for aggravating or mitigating circumstances. Therefore, absent extenuating circumstances, it would be difficult for the defendant to argue that there are mitigating circumstances in this case which are "not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). We find no such extenuating circumstances in this case.

Although the defendant has an exemplary record in the community as an employer and businessman, one could not have listened to this trial without being impressed by the defendant's heavy involvement in this drug operation and the substantial quantity of drugs involved. Given the seriousness of these drug-related offenses and the resulting harm to the public, we find that we cannot go below the sentencing guidelines in this case nor can we impose a period of home detention. Rather, we feel that a substantial period of incarceration is warranted. Accordingly, we sentenced the defendant, pursuant to our discretion under the sentencing guidelines, to a period of incarceration of eighteen (18) years or 216 months.

## CONCLUSION

After reviewing the testimony presented at trial, and after hearing counsels' arguments, in particular defendant's objections to the presentence report, we find that (1) the conspiracy extended past November 1, 1987, and as such, we are bound by the federal sentencing guidelines in sentencing the defendant, Zoltan Toth; (2) none of the guideline provisions on which this court relied, have been amended since the conclusion of the conspiracy to include more punitive provisions; accordingly, we find no violation of the ex post facto clause of the

---

7. There is no dispute that the defendant is not entitled to a decrease of two (2) levels for acceptance of responsibility pursuant to § 3E1.1 of the Sentencing Guidelines. The defendant continues to maintain his innocence. Presentence Report at 4; Transcript of Sentencing Hearing at 8, Arguments of Defense Counsel.

8. Where the guideline range exceeds twenty-four months, we are required to state our rea-

sons for having imposed a particular sentence. 18 U.S.C. § 3553(c)(1).

9. Under the sentencing guidelines, Zoltan Toth, having no criminal history and an offense level of thirty-six (36), faced a term of imprisonment ranging from 188 to 235 months. Sentencing Guidelines Ch. 5, Pt. A.

United States Constitution; (3) the defendant is responsible for all drugs produced in furtherance of the conspiracy; therefore, the defendant's offense level was correctly calculated under the guidelines to be thirty-six (36) carrying a term of imprisonment ranging from 188 to 235 months; and (4) the defendant's extensive role in the operation and the seriousness of his convictions warrant a period of substantial incarceration rather than a departure from the guidelines and a period of home detention.