UNITED STATES of America

v.

James COLE.

Crim. A. No. 91–570–02.

United States District Court,
E.D. Pennsylvania.

Feb. 15, 1994.

Allison D. Burroughs, Asst. U.S. Atty., for U.S.

L. Felipe Restrepo, Krasner & Restrepo, Joel P. Trigiani, Philadelphia, PA, for Cole.

## MEMORANDUM/ORDER

KATZ, District Judge.

**AND NOW,** this 15th day of February, 1994, pursuant to Rule 32(c)(3)(D), Fed. R.Crim.P., and after considering the Government's Sentencing Memorandum, the Defendant's Sentencing Memorandum, the Defendant's letter to the United States Probation Office, the Government's Response to Defendant's Objections to Presentence Report and Sentencing Memorandum, the Revised Presentence Report and a hearing, it is hereby **ORDERED** that the following findings and determinations of the court be appended to the Revised Presentence Investigation Report (the "PSI") in this case and shall accompany any copy of the PSI thereafter made available to the Bureau of Prisons. With regard to PSI and the parties objections thereto, the court rules as follows:

█ **1.** Through counsel, the defendant objects to the quantity of cocaine attributable to him for sentencing purposes. *See* Def.'s Probation Office Letter. Specifically, defendant objects to paragraphs 24–26, 28, 35, 37 and 38 of the PSI.[1] In conjunction with this objection the defendant argues that cocaine distributed by the defendant or other members of the JBM prior to the effective date (November 1, 1987) of the United States Sentencing Commission Guidelines Manual (the "Guidelines") is not attributable to the defendant at sentencing.

RULING:

**a.** On October 21, 1993, a jury found the Defendant guilty of Counts One, Two, Five, Six, Seven and Eight of Indictment No. 91–570–02.[2]

**b.** The six counts in question charged the defendant with acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan, namely being a member and leader of a large scale controlled substance distribution conspiracy known as the Junior Black Mafia or the JBM (the "JBM"). *See* Indictment 91–570, pp. 2–30; 21 U.S.C. §§ 841, 846, 848.

**c.** The six counts in question involve substantially the same type of harm and, pursuant to USSG § 3D1.2, shall be considered as a single group (the "Group") for sentencing purposes. USSG § 3D1.2(d).[3]

**d.** The offense level for the Group is the offense level corresponding to the aggregated quantity of controlled substances involved, determined in accordance with Chapter Two of the Guidelines and, where applicable, Parts A, B and C of Chapter Three of the Guidelines. U.S.S.G. § 3D1.1(b).

---

1. The defendant does not object to paragraphs 27 and 30 of the PSI.

2. Count One charged the Defendant with conspiracy to distribute and possess with the intent to distribute five (5) kilograms or more of cocaine. 21 U.S.C. § 841(a)(1). Count Two charged the Defendant with engaging in a continuing criminal enterprise. 21 U.S.C. § 848. Counts Five and Eight charged the Defendant with distribution of and possession with the intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1). Counts Six and Seven charged the Defendant with distribution of and possession with the in-tent to distribute approximately four (4) kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).

3. USSG § 3D1.2(d) provides:
   Offenses covered by the following guidelines are to be grouped under this subsection:
   §§ 2B1.1, 2B1.3, 2B4.1, 2B5.1, 2B5.3, 2B6.1;
   §§ 2C1.1, 2C1.2, 2C1.7
   **§§ 2D1.1, 2D1.2, 2D1.5, 2D1.11, 2D1.13**
   §§ 2E4.1, 2E5.1
   . . . .
   USSG § 3D1.2(d)

**e.** Both the statutory sentencing range, *see* 21 U.S.C. §§ 841, 848, and the offense level prescribed by the Guidelines, *see* USSG §§ 2D1.1, 2D1.5, for the Group depend upon the quantity of controlled substances involved. *Compare* 21 U.S.C. § 841(b)(1)(A) *with* 21 U.S.C. § 841(b)(1)(B); *see also* 21 U.S.C. § 848(b)(2)(A); USSG §§ 1B1.3, 2D1.1(a)(3), 2D1.5(a)(1).

■ **f.** The court finds the quantity of controlled substance attributable to the defendant for the Group to be at least 500 but less than 1500 kilograms of cocaine. At sentencing, the quantity of drugs attributable to a defendant convicted of being a leader of a large scale drug distribution conspiracy includes those amounts the defendant was directly involved in distributing plus those amounts distributed by his co-conspirators that were: (1) distributed in furtherance of the conspiracy as described in the count and conviction; (2) within the scope of the defendant's agreement with his co-conspirators; and, (3) reasonably foreseeable given the criminal activity the defendant agreed to undertake. *United States v. Collado*, 975 F.2d 985, 991, 995 (3d Cir.1992);[4] *see also* USSG § 1B1.3, comment (n. 1).

(1) The court finds that the defendant was a direct participant in the delivery or receipt of approximately 427 kilograms of cocaine. The trial testimony establishes that the defendant:

1. Delivered two suitcases containing fifty (50) kilograms of cocaine each for a total of one-hundred (100) kilograms to Dwight Sutton and Bernard Fields in Florida in June, 1987. *Testimony of Dwight Sutton*, 10/15/93, pp. 72–76;

2. Received twenty (20) kilograms of cocaine from Earl Stewart in early 1988. *Testimony of Earl Stewart*, 10/14/93, pp. 32–33;

3. Received an additional fifty (50) kilograms of cocaine from Earl Stewart in 1988. *Testimony of Earl Stewart*, 10/14/93, pp. 34–36;

4. Received two (2) deliveries, one of three to four (3–4) kilograms[5] and the other of four (4) kilograms of cocaine, from Earl Stewart in 1988, which Earl Stewart obtained from a third individual, Al. *Testimony of Earl Stewart*, 10/14/93, pp. 37–38;

5. Received five (5) deliveries of twenty (20) kilograms each of cocaine from Guillermo Pallacio and Marco Escobar–Lopez. *Testimony of Marco Escobar–Lopez*, 10/18/93, pp. 108–109; and

6. Received or arranged for the receipt by his agent, Mikal, three (3) deliveries of fifty (50) kilograms each of cocaine from Guillermo Pallacio and Marco Escobar–Lopez. *Testimony of Marco Escobar–Lopez*, 10/18/93, pp. 108–109;

(2) In addition to the 427 kilograms of cocaine attributable to the defendant for his direct participation, additional kilograms of cocaine are attributable to him for purposes of calculating the appropriate offense level under the Guidelines as a result of his position in the JBM. The JBM was a criminal organization which had as its primary purpose the distribution of large quantities of cocaine. *See e.g. Testimony of David Baynham*, 10/14/93, pp. 169–178. Indictment No. 91–570, pp. 2–15. A large quantity of the cocaine distributed by the JBM was obtained from a Florida source. *Id.* at pp. 163–178; *Testimony of Dwight Sutton*, 10/15/93, pp. 63–64, 66, 69, 70–71 72. The defendant and an associate known as J.B. delivered cocaine to co-conspirators Dwight Sutton and Bernard Fields in Florida in June of 1987. *Testimony of Dwight Sutton*, 10/15/93, pp. 72–76. The defendant's associate J.B. delivered cocaine to Dwight Sutton and David Baynham on other occasions. *Id.* at pp. 72–73, 78–79. If difficulties arose in closing a Florida transaction, the supplier and members of the JBM sought the intervention of the defendant. *Collado*, 985 F.2d at 995.

---

**4.** *Collado* instructs:

A "searching and individual inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical to ensure that the defendant's sentence accurately reflects his or her role."

**5.** Where the record establishes a range in the quantity of cocaine attributable to the defendant for a particular transaction, the court attributes the bottom of that range.

*Testimony of David Baynham*, 10/14/93, p. 178. The defendant was the JBM's "connection with Florida with getting the cocaine." *Id.* at p. 161. The defendant was responsible for arranging the JBM's acquisition of cocaine from Florida. *Id.; Testimony of Dwight Sutton*, 10/15/93, pp. 72–74. Therefore, the quantity of cocaine attributable to the defendant includes the amount of cocaine the JBM received from its Florida connection. *Collado*, 985 F.2d at 995; USSG § 1B1.3.

Members of the JBM made at least thirteen (13) separate trips to Florida with the intent to retrieve substantial quantities of cocaine.[6] The following chronology details thirteen (13) trips from Florida to Philadelphia by three members of the JBM, David Baynham, Bernard Fields and Dwight Sutton:

1. David Baynham and Bernard Fields transported cocaine weighing approximately seventy-five (75) to one-hundred (100) pounds (34–45 kilograms) in the fall of 1986. *Testimony of David Baynham*, 10/14/93, p. 163;

2. David Baynham and Bernard Fields transported cocaine weighing approximately one-hundred (100) pounds (45 kilograms) in late or about November ("Thanksgiving") of 1986. *Testimony of David Baynham*, 10/14/93, p. 166;[7]

3. David Baynham and Bernard Fields transported cocaine weighing approximately seventy-five (75) to one-hundred (100) pounds (34–45 kilograms) in or about late December ("Christmas") of 1986. *Testimony of David Baynham*, 10/14/93, pp. 168–169;

4. David Baynham and Bernard Fields transported cocaine weighing approximately seventy-five (75) to one-hundred (100) pounds (34–45 kilograms) in or about February of 1987. *Testimony of David Baynham*, 10/14/93, pp. 170–171;

5. Dwight Sutton and Bernard Fields transported ten (10) kilograms of cocaine in or about the end of April or the beginning of May of 1987. *Testimony of Dwight Sutton*, 10/15/93, pp. 58, 63–64;

6. Dwight Sutton and Bernard Fields transported ten (10) kilograms of cocaine in or about the end of May of 1987. *Testimony of Dwight Sutton*, 10/15/93, pp. 66, 69;

7. Dwight Sutton and Bernard Fields transported fifty (50) kilograms of cocaine in or about early June of 1987. *Testimony of Dwight Sutton*, 10/15/93, pp. 70–71 (five (5) ten (10) kilogram canisters);

8. Dwight Sutton and Bernard Fields transported two (2) suitcases, each containing fifty (50) kilograms of cocaine, in or about early June of 1987. *Testimony of Dwight Sutton*, 10/15/93, pp. 72–75.[8] This cocaine was delivered to Sutton and Fields the Defendant. *Testimony of Dwight Sutton*, 10/15/93, pp. 72–76; *supra* ¶ 1(f)(1) (point 1).[9]

9. Dwight Sutton and David Baynham transported one-hundred (100) kilograms of cocaine in the summer of 1987. *Testimony of Dwight Sutton*, 10/15/93, pp. 76–78; *Testimony of David Baynham*, 10/14/93, p. 173 (specific amount not stated by Baynham);

10. Dwight Sutton and David Baynham transported fifty (50) kilograms of cocaine in a BMW in the summer of 1987. *Testimony of Dwight Sutton*, 10/15/93, pp. 78–79; *Testimony of David Baynham*, 10/14/93, p. 174 (specific amount not stated by Baynham);

**6.** David Baynham testified that he and Bernard Fields made a final trip to Florida in December of 1987 (Trip 13) for the purpose of purchasing cocaine and transporting it to Philadelphia, but were unable to secure cocaine. *Testimony of David Baynham*, 10/14/93, pp. 177–178.

**7.** The record reference to 500 pounds is a typographical error. The record should read "100 pounds". *See Testimony of David Baynham*, 10/14/93, p. 166, 1. 17.

**8.** The record reference to 50 kiss is a typographical error. The record should read "50 keys". *See Testimony of Dwight Sutton*, 10/15/93, p. 75, 1. 23.

**9.** This amount is not double-counted by the court. *See* discussion *infra* pp. 273–274.

11. Dwight Sutton and David Baynham transported fifty (50) kilograms of cocaine in a Mitsubishi in or about August of 1987. *Testimony of Dwight Sutton,* 10/15/93, pp. 80–81; *Testimony of David Baynham,* 10/14/93, p. 175–177 (specific amount not stated by Baynham);

12. Dwight Sutton and David Baynham transported fifty (100) kilograms of cocaine in or about late October of 1987. *Testimony of Dwight Sutton,* 10/15/93, pp. 81–82; *Testimony of David Baynham,* 10/14/93, p. 175–177 (specific amount not stated by Baynham); and

13. David Baynham and Bernard Fields attempted to obtain cocaine in Florida for transport to Philadelphia in December of 1987 but were unsuccessful. *Testimony of David Baynham,* 10/14/93, pp. 177–178.

The court finds that the total amount of cocaine the JBM transported from Florida in the twelve (12) successful trips detailed above was 617 kilograms (total of Trips 1 through 12). Even excluding the cocaine transported in the first four Florida trips by David Baynham and Bernard Fields, the defendant's source produced 470 kilograms of cocaine for JBM distribution.

The court notes that included in the court's finding that not less than 470 kilograms of cocaine were transported by the JBM from Florida is the 100 kilograms the defendant personally delivered to Dwight Sutton and Bernard Fields. *See supra* ¶¶ 1(f)(1) (point 1 of direct participation), 1(f)(2) (point 8 of Florida trips). This same amount was also included in the court's finding that the defendant was a direct participant in the delivery or receipt of not less than 427 kilograms of cocaine. *See supra* ¶ 1(f)(1). In calculating the quantity of drugs attributable to a defendant for sentencing purposes, the court must avoid double-counting or overlap.

In addition, the defendant also arranged for a nine (9) kilogram delivery of cocaine to co-conspirator Sam Brown, *Testimony of David Baynham,* 10/14/93, pp. 184–185, of which at least five (5) kilograms were actually delivered, *Id.* at pp. 186; *Testimony of Christopher Anderson,* 10/18/93, pp. 20, and two (2) separate deliveries, one of thirty (30) kilograms of cocaine and the other of twenty (20) to thirty (30) kilograms of cocaine, from Escobar–Lopez to Niem and Shawn Davis, a co-conspirator. *Testimony of Marco Escobar–Lopez,* 10/18/93, pp. 124.

■ (3) The defendant contends that the cocaine distributed prior to the effective date of the Guidelines is not attributable to him. This contention is incorrect. A defendant who commits a crime that begins prior to the effective date of the Guidelines and continues beyond such effective date is subject to Guidelines sentencing for the entire crime. *See United States v. Rosa,* 891 F.2d 1063, 1069 (3d Cir.1989).

■ 2. Through counsel, the defendant objects to paragraph 46 of the PSI. Paragraph 46 provides an upward adjustment of two (2) points for the specific offense characteristic of firearm possession during the course of the conspiracy pursuant to section 2d1.1(b)(1) of the Guidelines. The defendant asserts that this adjustment is violative of double jeopardy because the adjustment is based on conduct that occurred during the time-frame of the instant conspiracy and led to a conviction in a separate federal proceeding. Def.'s Sentencing Mem. p. 3; PSI ¶ 60.

RULING: The defendant possessed a .45 calibre Colt automatic pistol on March 29, 1989 during the conspiracy period. *Testimony of Michael Campbell,* 10/19/93, pp. 9–10. The two-level enhancement for possession of a firearm does not violate the Double Jeopardy Clause. The Double Jeopardy Clause of the Fifth Amendment protects defendants against successive prosecutions for the same criminal act or transaction. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The purpose of this protection is "to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989). Title 21 U.S.C. § 848 provides a mandatory minimum sentence of twenty (20) years for a CCE conviction. 21 U.S.C. § 848(a). When Con-

gress said "imprisonment which may not be less than 20 years" it meant a maximum sentence of life imprisonment. *United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989). The two-level enhancement mandated by section 2D1.1(b)(1) of the Guidelines does not increase the sentence for the CCE conviction above the maximum provided by Congress. Therefore, there is no additional prosecution for the defendant's prior criminal acts.[10] *Williams*, 892 F.2d at 305; *United States v. Tidswell*, 767 F.Supp. 11, 17 (D.Me.1991).

The two (2) level reduction for which the defendant argues does not, in any event, change the applicable offense level. USSG Ch. 5, Pt. A, comment. (n. 2) ("An offense level of more than 43 is to be treated as an offense level of 43). *See infra,* ¶ 3 (total offense level is 46).[11]

■ 3. Through counsel, the defendant objects to paragraphs 43, 45, 48, 50 and 52 of the PSI. Paragraph 43 states that the conspiracy conviction should be used to calculate the defendant's offense level under the Guidelines. Paragraph 45 fixes the defendant's base offense level at forty (40) with reference to his conviction for conspiracy and the quantity of cocaine attributable to him. PSI ¶ 45, Def.'s Sentencing Mem. p. 2. Paragraph 48 adds four (4) levels to the defendant's offense level for his role as a leader and organizer of the JBM. PSI ¶ 48; USSG § 3B1.1(a). Paragraphs 50 and 52 set the defendant's total offense level at forty-six (46). Specifically, the defendant contends that (a) the base offense level should be

determined with reference to his conviction for continuing criminal enterprise ("CCE") because CCE is a more serious offense than conspiracy, and (b) that CCE carries an unvarying offense level of thirty-eight (38) that may not be adjusted for the defendant's leadership role in the offense.

RULING: The applicable Guideline section for the CCE conviction sets the offense level at **the greater of:**

1. *4 plus the offense level from § 2D1.1* applicable to the underlying offense, or

2. 38.

USSG § 2D1.5.

The court finds that it is immaterial whether the total offense level for the Group is calculated with reference to the conspiracy conviction or the CCE conviction.[12] Both calculations include the same components; a base offense level provided by the Drug Quantity Table (USSG § 2D1.1(c)), a two (2) level increase for possession of a firearm (USSG § 2D1.1(b)(1)), and a four (4) level increase for the defendant's leadership role. USSG §§ 2D1.5(a)(1), 3B1.1(a). Both calculations produce a total offense level of forty-six (46).

Using the CCE conviction as the operative operative offense, given the quantity of cocaine attributable to the defendant (not less than 852 kilograms), produces an offense level of forty-six (46). The offense level from USSG § 2D1.1 applicable to the underlying offense of conspiracy is forty-two (42).[13]

---

10. The defendant cites *United States v. Dixon*, — U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), to support his position. The issue in *Dixon* was whether the Double Jeopardy Clause bars a successive prosecution for criminal activity that was the basis for a completed criminal contempt proceeding. *Dixon*, — U.S. ——, 113 S.Ct. 2849. Under the most expansive reading of *Dixon*, the defendant's double jeopardy argument fails the *Blockburger* "same elements" test, even if there is an arguable (but erroneous) basis to claim that the "same conduct" test in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), might be applicable.

11. Alternatively, if the firearm offense is not included in calculating the offense level the defendant's criminal history category would be increased by two (2) points for the firearm conviction and one (1) additional point because the

offense was committed within two (2) years of the defendant's release from incarceration. USSG §§ 4A1.1(b), (e). Under this approach the total of the defendant's criminal history points would be seven (7), for a criminal history category of IV. USSG Ch. 5, Pt. A.

12. "[S]entencing courts must apply the guidelines in effect at the time of sentencing, not the time of the crime. But where such retroactivity results in harsher penalties, Ex Post Facto Clause problems arise, and courts must apply the earlier version." *United States v. Kopp*, 951 F.2d 521, 526 (3d Cir.1991) (citations omitted). Use of the current Guidelines does not result in harsher penalties.

13. The offense level provided by USSG § 2D1.1 is composed of:

Then, four (4) levels are added pursuant to USSG § 2D1.5(a)(1), for a total offense level of forty-six (46).

Using the conspiracy conviction as the operative offense likewise produces an offense level of forty-six (46). The offense level from USSG § 2D1.1 is forty-two. This level is then increased by four (4) levels pursuant to USSG § 3B1.1(a) because the defendant was an organizer or leader of a criminal activity that involved five or more participants, or was otherwise extensive. USSG § 3B1.1.[14]

4. Through counsel, the defendant objects to paragraphs 10–14 of the PSI.

RULING: Paragraphs 10 through 14 of the PSI accurately set forth the JBM's structure and activities.

5. Through counsel, the defendant objects to paragraphs 15 through 24, 29, 31 through 34 and 36 of the PSI.

RULING: No finding is necessary because the matters controverted in these paragraphs will not be taken into account in sentencing.

 6. Through counsel, the defendant objects to paragraph 62 of the PSI which states that the defendant should be assigned four criminal history points with a corresponding criminal history category of III. This calculation includes one (1) criminal history point each for a November 14, 1977 conviction and a July 12, 1982 conviction. PSI ¶¶ 57, 58. The defendant contends that these convictions are too remote to be considered. In the alternative, the defendant argues that a criminal history category of III overstates the defendant's position before the court, and the court should dismiss the criminal history points from the 1977 and 1982 convictions on that ground. *See* PSI, ¶ 105.

RULING: The criminal history points corresponding to the 1977 and 1982 convictions are properly included in the defendant's criminal history computation. Section

4A1.2(e)(2) of the Guidelines provides that, with respect to tabulating criminal history points, any prior "sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." USSG § 4A1.2(e)(2).

The criminal history record does not overstate the seriousness of the prior convictions.

CONCLUSION: The defendant's mandatory sentence is life imprisonment.

---

1. A base offense level of 40 for "at least 500 KG but less than 1500 KG of Cocaine." USSG § 2D1.1(c)(2); **plus,**

2. An increase of 2 levels for possession of a dangerous weapon. USSG § 2D1.1(b)(1).

14. When a CCE conviction is used as the operative offense an adjustment for the defendant's role in the offence (i.e. USSG § 3B1.1(a)) is not authorized because the offense level provided by section 2D1.5 of the Guidelines already reflects an adjustment for role in the offense. USSG § 2D1.5, comment. (backg'd).